**PROJECT NAME/ LOCATION:**  P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex
MCB, Camp Lejeune, NC

**CONTRACT NUMBER:**  N40085-11-C-4001
Job No. 11-4001

### CONTRACT COMPLIANCE

The following report is required for work performed at the project site during the particular reporting period. Report is due by the **5th of each month** for the prior month and should be complete and accurate prior to submitting them to the General Contractor.

The following report is required:

1.  **CC-257:** This report must reflect total work hours performed on all contracts throughout *Job site County* the end of the calendar month. Under Construction Trade (Column 5) list only those working trades that provided work **at the job site**, exclude non-working supervisors, non-working superintendents, and office personnel. Under Columns 6a through 6e, the subcontractor must show **work hours**, not number of employees. This report is required monthly by all subcontractors until that portion of their work is completed. Each subcontractor must indicate "final report" across the face of the document when his/her portion of work is completed. The goals for minority and female participation are as follows: Minority participation is 23.5% and Female participation is 6.9%.

### INSTRUCTIONS FOR FILING MONTHLY EMPLOYMENT UTILIZATION REPORT (CC-257)

The Monthly Utilization, Report is to be completed by each subject contractor (both prime and sub) and signed by a responsible official of the company. The reports are to be filed by the **5th day of each month** during the term of the contract, and they shall include the total work-hours for each employee classification in each trade in the covered area for the monthly reporting period. The prime contractor shall submit a report for its aggregate workforce and collect and submit reports for each subcontractor's aggregate workforce to the Federal compliance agency that has Executive Order 11246 responsibility. (Additional copies of this form may be obtained from the U.S. DOL, Employment Standards Administration, and/or OFCCP's regional office for your area.)

| | |
|---|---|
| Compliance Agency | U.S. Government agency assigned responsibility for equal opportunity. (Secure this information from the contracting officer.) |
| Federal Funding Agency | U.S. Government agency funding project (in whole or in part). If more than one agency, list all. |
| Contractor | Any contractor who has a construction contract with the U.S. Government or a contract funded in whole or in part with Federal Funds. |
| Minority | Includes Blacks, Hispanics, American Indians, Alaskan Natives, and Asian and Pacific islanders, both men and women. |
| 1.  Covered Areas | Geographic area identified in Notice required under 41 CFR 60-4.2 |

Case 3:15-cv-00256-GCM   Document 1-2   Filed 06/09/15   Page 2 of 68

2.  Employers Identification Number    Federal Social Security Number used on Employers' Quarterly Federal Tax Return (U.S. Treasury Department Form 941).

3.  Current Goals (Minority and Female)    See Contract Notification.

4.  Report Period    Monthly, or as directed by the compliance agency, beginning with the effective date of the contract.

5.  Construction Trade    Only those construction crafts which contractor employs in the covered area.

6.  Work-Hours of Employment (a-e)
    a. The total number of male hours and total number of female hours worked by employees in each classification.
    b. b-e. Tile total number of male hours and the total number of' female hours worked by each specified group of minority employees in each classification.

    Classification    The level of accomplishment or status of the worker in the trade (Journey Worker, Apprentice, Trainee).

7.  Minority Percentage    The percentage of total minority work-hours of all work-hours (the sum of columns 6b, 6d and 6e divided by column 6a, just one figure for each construction trade).

8.  Female Percentage    For each trade the number reported in 6a. F divided by the sum of file numbers reported in 6a M and F.

9.  Total Number of Employees    Total number of male and total number of female employees working in each classification of each trade in the contractor's aggregate work force during reporting period.

10. Total Number of Minority Employees    Total number of male minority employees and number of female minority employees working in each classification in each trade in the contractor's aggregate work force during reporting period.

Case 3:15-cv-00256-GCM    Document 1-2    Filed 06/09/15    Page 2 of 68

Subcontractor's Initials

| U.S. DEPARTMENT OF LABOR<br>Employment Standards Administration, OFCCP | MONTHLY EMPLOYMENT<br>UTILIZATION REPORT | 1. COVERED AREAS | 3. CURRENT GOALS<br>MINORITY: 23.5%<br>FEMALE: 6.9% | 4. REPORTING PERIOD<br>FROM: _____<br>TO: _____ |
|---|---|---|---|---|
| This report is required by Executive Order 11246, Sec. 203. Failure to report can result in contract being cancelled, terminated or suspended in whole or in part and the contractor may be declared ineligible for further Government contract or federally assisted construction contract. | | 2. Employers ID NO. | | |
| | NAME AND LOCATION OF CONTRACTOR | | | FEDERAL FUNDING AGENCY |

| CONSTRUCTION TRADE | CLASSIFICATION | TOTAL ALL EMPLOYEES BY TRADE | | BLACK (Not of Hispanic Origin) | | HISPANIC | | ASIAN O.F PACIFIC ISLANDERS | | AMERICAN INDIAN OR ALASKAN NATIVE | | MINORITY PERCENTAGE | FEMALE PERCENTAGE | TOTAL NUMBER OF EMPLOYEES | | TOTAL NUMBER OF MINORITY EMPLOYEES | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | M | F | M | F | M | F | M | F | M | F | | | M | F | M | F |
| | Journey Worker | | | | | | | | | | | | | | | | |
| | APPRENTICE | | | | | | | | | | | | | | | | |
| | TRAINEE | | | | | | | | | | | | | | | | |
| | SUB-TOTAL | | | | | | | | | | | | | | | | |
| | Journey Worker | | | | | | | | | | | | | | | | |
| | APPRENTICE | | | | | | | | | | | | | | | | |
| | TRAINEE | | | | | | | | | | | | | | | | |
| | SUB-TOTAL | | | | | | | | | | | | | | | | |
| | Journey Worker | | | | | | | | | | | | | | | | |
| | APPRENTICE | | | | | | | | | | | | | | | | |
| | TRAINEE | | | | | | | | | | | | | | | | |
| | SUB-TOTAL | | | | | | | | | | | | | | | | |
| | Journey Worker | | | | | | | | | | | | | | | | |
| | APPRENTICE | | | | | | | | | | | | | | | | |
| | TRAINEE | | | | | | | | | | | | | | | | |
| | SUB-TOTAL | | | | | | | | | | | | | | | | |
| | Journey Worker | | | | | | | | | | | | | | | | |
| | APPRENTICE | | | | | | | | | | | | | | | | |
| | TRAINEE | | | | | | | | | | | | | | | | |
| | SUB-TOTAL | | | | | | | | | | | | | | | | |
| TOTAL JOURNEY WORKERS | | | | | | | | | | | | | | | | | |
| TOTAL APPRENTICES | | | | | | | | | | | | | | | | | |
| TOTAL TRAINEES | | | | | | | | | | | | | | | | | |
| GRAND TOTAL | | | | | | | | | | | | | | | | | |

| 11. COMPANY OFFICIAL'S SIGNATURE AND TITLE | 12. TELEPHONE NUMBER (including area code) | 13. DATE SIGNED | PAGE _____ of _____ |
|---|---|---|---|

Case 3:15-cv-00256-GCM   Document 1-2   Filed 06/09/15   Page 3 of 68

**RQ/Brasfield Gorrie JV**

## EQUAL EMPLOYMENT OPPORTUNITY

It is the policy of RQ/Brasfield Gorrie JV to observe and comply with the Civil Rights Act (Title VII) of 1964, the Federal Equal Pay Act of 1963, the Age Discrimination in Employment Act of 1967, Executive Order No. 11246, the Rehabilitation Act of 1973, the Veterans Readjustment Act of 1974, and all pertinent Executive Orders and regulations regarding equal employment opportunity.

Further, it is our policy to take affirmative action to hire employees without regard to race, creed, color, sex, national origin, age, handicap, or because he or she is a disabled veteran or veteran of the Vietnam Era in regard to any position for which the employee or applicant for employment is qualified.

This company will act without discrimination in regard to the above in all employment practices, such as, a) advertising; b) recruitment; c) testing; d) screening; e) hiring; f) selection for training, including apprenticeship; g) upgrading; h) transfer; h) demotion; i) layoff; j) termination; k) rates of pay; l) other forms of compensation, including retirement; or m) overtime. Employees will be judged solely by their qualification for the particular job and will receive equal treatment after employment. None of the company's facilities are to be segregated, classified, or limited in any way that would adversely offset the status of an employee.

In accordance with federal regulations, this company will make every good faith effort to fulfill obligations not only for minorities, but it will also establish specific affirmative action programs and standards for women in construction.

Handicapped workers will not be discriminated against because of their handicaps. This company understands that according to federal regulations "a handicap is any impairment which substantially limits one or more of a person's major life activities." In addition to recruiting, hiring and other conditions of employment, this company will take affirmative action in training and in modifying job requirements and facilities for the physically or mentally handicapped to comply with these regulations.

This Company cooperates fully with the construction trade unions in the development of programs, including apprenticeship, to assure qualified minority persons, women, the handicapped, disabled veterans or veterans of the Vietnam Era of equal opportunity for employment in construction trades and that all of the above conditions are met.

The Company will take appropriate steps to insure that all employees are advised of our nondiscrimination policy and/or our interest in actively and affirmatively providing equal employment through notices on bulletin boards, notices to unions, notices in office and field offices, publications, and work with civic groups.

We will not retaliate against anyone who has opposed employment practices that may be illegal under the Acts or because he or she has testified or participated in any proceedings under the Acts.

Management will continue to be guided and motivated by this policy, and the cooperation of all employees will actively pursue the goal of equal employment through the Company.

**RQ/Brasfield Gorrie JV**
**Kathy Wokas**
EEO Officer

Subcontractor's Initials

## Acknowledgement of EEO Commitment By
### Supplier or Subcontractor

Name: _Masterweave Commercial_

Street Address: _8000 East Brainerd Rd. Ste.118_

City: State: _Chattanooga , TN_     Zip: _37421_

Telephone: _423-892-7305_     Code: _____

**EXISTING POLICIES:**

Please indicate whether your firm has already developed a written affirmative action program because of previous held contracts or subcontracts subject to Equal Employment Opportunity Clause of Executive Order No. 11246.

Yes _____     No __X__

__X__  Supplier or subcontractor acknowledges receipt of the notice of requirement to undertake affirmative action to overcome any under utilization.

__X__  We certify that we are eligible to hold government contracts and that we will make every effort to comply with the affirmative action requirements of this contract.

Signature _____

Print Name _MATT FARGO_

Title _President_

Date _2-27-13_

Kathy Wokas, EEO Officer
RQ/Brasfield Gorrie JV

# DAILY REPORTS

[See Instructions for Certified Payroll Reports for further information]

Daily Reports are a two-part form that is completed by each subcontractor's foreman or superintendent and handed in to the RQ/Brasfield Gorrie JV superintendent each day. The report lists the date, day, project name, subcontractor company name, and each worker on the job for that particular day along with what work was performed and how many hours each worker was present on the job site. The RQ/Brasfield Gorrie JV superintendent creates a production report that summarizes all the dailies into one report which is then given to the OWNER's office each day. The production report then becomes the expected source document for the Certified Payrolls.

**IT IS VERY IMPORTANT** THAT THE SUBCONTRACTOR FOREMAN/ SUPERINTENDENT SENDS A COPY OF THE DAILY REPORT TO HIS/HER PAYROLL DEPARTMENT EACH DAY. THE DAILY REPORTS **MUST** MATCH THE TIMECARDS AND CERTIFIED PAYROLLS.

Amended Daily Reports: If there has been an error on the Daily Report, an amended daily report must be forwarded ALONG WITH THE CERTIFIED PAYROLL for that date. Do not send a new Daily Report; send a copy of the original Daily Report with your notated amendment. The amendment must be included with the payroll for that week. If an error is discovered after the payroll has been sent to our office, an amended report will NOT be accepted and your payroll will need to be adjusted to match the daily handed in at the job site.

**Missing, Incomplete or Incorrect Daily Reports—Unilateral Backcharge**

RQ/Brasfield Gorrie JV will unilaterally process a **$25 back-charge**, on a daily basis, to all subcontractors for each missing or incorrect Daily Report. This is a liquidated damage charge for the administrative expense incurred by RQ/Brasfield Gorrie JV in performing extra clerical work required under its contract with the Government as a result of each missing or incorrect daily report.

It is the subcontractor's responsibility to **accurately** complete and turn in their Daily Report - on a daily basis. The report is to be handed in to the superintendent or clerk on the job site and it is highly recommended that a copy be faxed or delivered to the subcontractor's home office.

Certified payrolls **MUST MATCH** the daily reports handed in. Please advise your job site superintendents and foremen of this new policy.

For each daily report that is missing or is incorrectly completed by the subcontractor, or their tier-subcontractors, this backcharge will be issued to cover lost time by our staff to amend the Production Reports that are handed-in to the OWNER's office each day.

Subcontractor's Initials

# Daily Report



BRASFIELD & GORRIE
VERTICAL CONTRACTORS
A Joint Venture

| Day of Week | | Subcontractor | |
|---|---|---|---|
| Date | | Trade | |
| Project Name | | Phone # | |
| WEATHER: | Clear ( )    Overcast ( )    Rain ( )    Temp High ( )    Temp Low ( ) | | |

## SAFETY

| | | | |
|---|---|---|---|
| Was A Job Safety Meeting Held Today? | YES ( ) | NO ( ) | if yes, attach copy |
| Were there any injuries to crew members today? | YES ( ) | NO ( ) | if yes, attach report |
| Were there any near miss incidents today? | YES ( ) | NO ( ) | if yes, please explain |

## TIER SUBCONTRACTOR INFORMATION (Tier subcontractors must fill out their own daily)

| Do You Have A Tier Sub on Site Today? | YES ( ) | NO ( ) | If Yes, List Tier's Names, Trade & Phone Numbers |
|---|---|---|---|
| Tier Subcontractor Names | | Trade | Phone Number |
| | | | |
| | | | |

| Are You A Tier Sub? | YES ( ) | NO ( ) | If Yes, List Subcontractor Name That You Are Working For |
|---|---|---|---|
| Subcontractor Name | | Trade | Phone Number |
| | | | |

## MATERIAL RECEIVED TODAY (attach copy of invoice / receipt)

| Material Received | Vendors Name | Material Received | Vendors Name |
|---|---|---|---|
| | | | |
| | | | |

## EQUIPMENT UTILIZED TODAY (List Make, Model and attach copy of equipment checklist)

| DO YOU OWN    OR    RENT    YOUR EQUIPMENT | | | | | The undersigned herein certifies that a visual Inspection was performed this date on all equipment utilized. |
|---|---|---|---|---|---|
| Qty. | Make | Model | Hours Used | Suppliers Name (If Rental) | |
| | | | | | |
| | | | | | |
| | | | | | |

## WORK PERFORMED TODAY

| Schedule Activity No. | Name | Classification | Hours | Location and Description of work performed |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Remarks**

| |
|---|
| |
| |
| |
| |
| |

| Signature | Title |
|---|---|
| | |

Distribution:          White Copy – Job Site          Yellow Copy - Subcontractors          Revised 04/01/2010

## ATTACHMENT I

## WAGE DETERMINATION

GENERAL DECISION: NC20100033 03/12/2010 NC33

Date: March 12, 2010
General Decision Number: NC20100033 03/12/2010

Superseded General Decision Number: NC20080033

State: North Carolina

Construction Type: Building

County: Onslow County in North Carolina.

BUILDING CONSTRUCTION PROJECTS (does not include single family
homes and apartments up to and including 4 stories)

Modification Number    Publication Date
    0          03/12/2010

SUNC2000-001 03/21/2000

|  | Rates | Fringes |
|---|---|---|

Bricklayer.....................$ 16.40     1.00

Carpenter
_(includes batt insulation
and drywall hanging).....$ 9.92

Cement mason/concrete
finisher......................$ 13.20

Electrician.....................$ 10.80

Ironworker, structural........$ 10.00

Laborer, general..............$ 7.25

Painter, brush
_(includes drywall
finishing)..............$ 8.37

Pipefitter
_(includes HVAC
piping)..................$ 14.59     4.05

Plumber
_(does not include HVAC
piping)..................$ 12.00

Power equipment operators:
_Backhoe.....................$ 10.83     1.37

Roofer..........................$ 9.00

Sheet metal worker
_(includes HVAC duct work)..$ 10.53     2.17

Truck driver..................$ 8.85

---

WELDERS - Receive rate prescribed for craft performing
operation to which welding is incidental.

Unlisted classifications needed for work not included within
the scope of the classifications listed may be added after
award only as provided in the labor standards contract clauses

(29CFR 5.5 (a) (1) (ii)).

---

In the listing above, the "SU" designation means that rates listed under the identifier do not reflect collectively bargained wage and fringe benefit rates. Other designations indicate unions whose rates have been determined to be prevailing.

---

### WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can be:

* an existing published wage determination
* a survey underlying a wage determination
* a Wage and Hour Division letter setting forth a position on a wage determination matter
* a conformance (additional classification and rate) ruling

On survey related matters, initial contact, including requests for summaries of surveys, should be with the Wage and Hour Regional Office for the area in which the survey was conducted because those Regional Offices have responsibility for the Davis-Bacon survey program. If the response from this initial contact is not satisfactory, then the process described in 2.) and 3.) should be followed.

With regard to any other matter not yet ripe for the formal process described here, initial contact should be with the Branch of Construction Wage Determinations. Write to:

> Branch of Construction Wage Determinations
> Wage and Hour Division
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210

2.) If the answer to the question in 1.) is yes, then an interested party (those affected by the action) can request review and reconsideration from the Wage and Hour Administrator (See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

> Wage and Hour Administrator
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.

Washington, DC 20210

The request should be accompanied by a full statement of the interested party's position and by any information (wage payment data, project description, area practice material, etc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an interested party may appeal directly to the Administrative Review Board (formerly the Wage Appeals Board). Write to:

> Administrative Review Board
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210

4.) All decisions by the Administrative Review Board are final.

---

END OF GENERAL DECISION

## ACCOUNTING AND APPROPRIATION DATA

AA: 1711205 2511 323 05205 0 068732 2D 114001
COST CODE: AA00A0018075
AMOUNT: $37,553,186.00
CIN 000000000000000000000000000000: $37,553,186.00

AB: 1711205 2511 323 05205 0 068732 2D 114001
COST CODE: AB00A0024205
AMOUNT: $41,909,647.00
CIN 000000000000000000000000000000: $41,909,647.00

## AFFIDAVIT NAMING PERSON AUTHORIZED

**TO SIGN PAYROLL/INVOICES**

STATE OF _____ TN _____

COUNTY OF _____ Hamilton _____

I, _____ MATT FARGO _____DO UNTIL FURTHER NOTICE APPOINT
(Name of owner, partner or corporate officer and title)

_____ Jill Fargo _____ AS PAYMASTER, AND APPOINT _____ MATT FARGO _____
(Name of individual being appointed)                              (Name of individual being appointed)

AS DESIGNATED OFFICER TO SIGN INVOICES ON THE CONSTRUCTION WORK AT THE

<u>**P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex, MCB, Camp Lejeune, NC**</u>

FOR CONTRACT NO. <u>**N40085-11-C-4001**</u> DO FURTHER APPOINT AND AUTHORIZE _____.

_____ Jill FARGO _____
(Name of individual being appointed)

(HIM/HER) TO EXECUTE COMBINATION COPELAND, DAVIS-BACON, WORK HOURS ACT

COMPLIANCE STATEMENTS REQUIRED TO BE FILED WITH THE PAYROLLS AND HEREBY CERTIFY

THAT (HE/SHE) IS IN A POSITION TO HAVE FULL KNOWLEDGE OF THE FACTS SET FORTH IN THIS

STATEMENT.

MASTERWEAVE Commercial
(Contracting Company or Firm Name)

DATED: _____ 2-27-13 _____

_____
(Owner, Partner or Corporate Officer Signature)

The Prime Contractor is required to obtain and deliver a similar affidavit for each of its subcontractors if such authorization is required.

Authorization is required if any individual other than an owner, partner or corporate officer is to execute the combination (Copeland, Davis-Bacon, Work Hours Act of 1962) Compliance Statement required to be filed with each weekly payroll report. This affidavit is to be submitted with the first payroll only unless a change is made in the person authorized to supervise the payroll, in which case a new affidavit is require

PROJECT NAME/ LOCATION:    P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex
MCB, Camp Lejeune, NC

CONTRACT NUMBER:    N40085-11-C-4001
Job # 11-4001

## PRELIMINARY NOTICE INFORMATION

OWNER:    Department of the Navy
Naval Facilities Engineering Command, Mid-Atlantic
9742 Maryland Avenue
Norfolk, VA 23511-3095

LENDER:    None Noted

GENERAL CONTRACTOR:    RQ/Brasfield Gorrie JV
3194 Lionshead Avenue
Carlsbad, CA 92010
(760) 631-7707

JOBSITE ADDRESS:    RQ/Brasfield Gorrie JV Jobsite Trailer
North Wallace Creek
PT-5A Parachute Tower Road
Camp Lejeune, NC 28547

RQ BONDING COMPANY:    Western Surety Company
P.O. Box 5077
Sioux Falls, SD 57117-5077

RQ BONDING AGENT:    DiLynn Guern
Willis HRH
720 South Colorado Boulevard, Suite 600N
Denver, CO 80246
Phone: (303) 765-1505
Fax: (303) 722-0811

BRASFIELD GORRIE
BONDING COMPANY:    Chris Muscolino
Federal Insurance Company
15 Mountain View Road
Warren, NJ 07059

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183

Page 1 of 1          Subcontractor's Initials

**PROJECT NAME/ LOCATION:**      P-1322, P1323 & P1249 Wallace Creek BEQ/Armory
Complex, MCB, Camp Lejeune, NC

**CONTRACT NUMBER:**      N40085-11-C-4001
Job No. 11-4001

### PROGRESS BILLING REQUIREMENTS AND PROCEDURES

1. **On or about the 17th of the month,** billing percentages will be agreed to in the field between RQ/Brasfield Gorrie JV's Superintendent and the subcontractor's field representative. At RQ/Brasfield Gorrie JV's discretion, percentages may be projected through the end of the month. Pending any changes made by the OWNER, the invoice and accompanying schedule of values will be generated by RQ/Brasfield Gorrie JV and forwarded to Subcontractor's home office for processing. Subcontractors are limited to invoicing the project once a month.

2. Any invoice reflecting unapproved extras or unprocessed change orders will be rejected. Any and all extras must be in the form of an executed change order before an invoice will be approved.

3. The invoice **and** conditional lien release must be sent to the RQ/Brasfield Gorrie JV corporate office, Attn: Project Administrator **by the 17th of each month.** The release forms for this project are included for your use.

4. Lien releases are required from all of your subcontractors and suppliers every month. In the event that a subcontractor or supplier did not provide services or materials on the project for the subject month, an unconditional release is required to evidence no balance.

5. Payments will be made after receipt of the OWNER's payment and pursuant to your subcontract agreement. If you prefer payment to be sent Fed-Ex or UPS, e-mail a written request with your shipper's account number to the RQ/Brasfield Gorrie JV accounting department. Otherwise, payments are typically mailed.

**Progress billings will not be processed unless ALL of the following conditions have been met:**

1. The Subcontract Agreement is fully executed and all required attachments conform and are processed by the RQ/Brasfield Gorrie JV corporate office, **including but not limited to:** Insurance Certificates, Statement and Acknowledgment, Schedule of Values, List of Suppliers/Tiered Subs, Payroll Affidavit, EEO Statement, W-9, and Submittals.

2. Certified payroll reports for your company and tier-subs are **current and deemed to be correct by RQ/Brasfield Gorrie JV and the OWNER.** Be advised that the Government may withhold payment until all monthly reports and payroll reports have been received. The Government will withhold funds for every man-hour for all payroll reports considered deficient or delinquent. These withholdings will be released to the Subcontractor the first pay period following the date the payrolls have cleared.

3. All lien releases have been submitted.

# CONDITIONAL WAIVER AND RELEASE ON PROGRESS PAYMENT

### Pursuant to *California Civil Code* Section 8132

NOTICE: THIS DOCUMENT WAIVES THE CLAIMANT'S LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS EFFECTIVE ON RECEIPT OF PAYMENT. A PERSON SHOULD NOT RELY ON THIS DOCUMENT UNLESS SATISFIED THAT THE CLAIMANT HAS RECEIVED PAYMENT.

**Identifying Information**

| | |
|---|---|
| Name of Claimant | |
| Name of Customer | RQ/Brasfield Gorrie JV |
| | N40085-11-C-4001 |
| Project | P-1322, P-1323 & P-1249 Wallace Creek BEQs & Armory |
| Job Location | MCB Camp Lejeune, NC |
| Owner | Department of the Navy |
| Through Date | |

**Conditional Waiver and Release**

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for labor and service provided, and equipment and material delivered, to the customer on this job through the Through Date of this document. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. This document is effective only on the claimant's receipt of payment from the financial institution on which the following check is drawn:

| | |
|---|---|
| Maker of the Check | RQ/Brasfield Gorrie JV |
| Amount of the Check | $ |
| Check Payable to: | |

**Exceptions**

This document does not affect any of the following:
    (1) Retentions.
    (2) Extras for which the claimant has not received payment.
    (3) The following progress payments for which the claimant has previously given a conditional waiver and release but has not received payment:
        Date(s) of waiver and release: _____
        Amount(s) of unpaid progress payment(s): $_____
    (4) Contract rights, including (A) a right based on rescission, abandonment, or breach of contract, and (B) the right to recover compensation for work not compensated by the payment.

**Signature**

| | |
|---|---|
| Claimant's Signature | |
| Claimant | |
| Claimant's Title | |
| Date of Signature | |

PLEASE SIGN & RETURN ORIGINAL
**RQ/Brasfield Gorrie JV**
**3194 Lionshead Avenue**
**Carlsbad, CA 92010**
**Ph 760-631-7707**
**Fx 760-631-8162**

# UNCONDITIONAL WAIVER AND RELEASE ON PROGRESS PAYMENT
## Pursuant to *California Civil Code* Section 8134

NOTICE TO CLAIMANT: THIS DOCUMENT WAIVES AND RELEASES LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS. THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID. IF YOU HAVE NOT BEEN PAID, USE A CONDITIONAL WAIVER AND RELEASE FORM.

### Identifying Information

| | |
|---|---|
| Name of Claimant | |
| Name of Customer | RQ/Brasfield Gorrie JV |
| | N40085-11-C-4001 |
| Project | P-1322, P-1323 & P-1249 Wallace Creek BEQs & Armory |
| Job Location | MCB Camp Lejeune, NC |
| Owner | Department of the Navy |
| Through Date | |

### Unconditional Waiver and Release

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for labor and service provided, and equipment and material delivered, to the customer on this job through the Through Date of this document. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. The claimant has received the following progress payment: $_____

### Exceptions

This document does not affect any of the following:
  (1) Retentions.
  (2) Extras for which the claimant has not received payment.
  (3) Contract rights, including (A) a right based on rescission, abandonment, or breach of contract, and (B) the
      right to recover compensation for work not compensated by the payment.

### Signature

| | |
|---|---|
| Claimant's Signature | |
| Claimant | |
| Claimant's Title | |
| Date of Signature | |

### PLEASE SIGN & RETURN ORIGINAL

**RQ/Brasfield Gorrie JV**
**3194 Lionshead Avenue**
**Carlsbad, CA 92010**
**Ph 760-631-7707**
**Fx 760-631-8162**

# CONDITIONAL WAIVER AND RELEASE ON FINAL PAYMENT
## Pursuant to *California Civil Code* Section 8136

NOTICE: THIS DOCUMENT WAIVES THE CLAIMANT'S LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS EFFECTIVE ON RECEIPT OF PAYMENT. PERSON SHOULD NOT RELY ON THIS DOCUMENT UNLESS SATISFIED THAT THE CLAIMANT HAS RECEIVED PAYMENT.

### Identifying Information

| | |
|---|---|
| Name of Claimant | |
| Name of Customer | RQ/Brasfield Gorrie JV |
| | N40085-11-C-4001 |
| Project | P-1322, P-1323 & P-1249 Wallace Creek BEQs & Armory |
| Job Location | MCB Camp Lejeune, NC |
| Owner | Department of the Navy |

### Conditional Waiver and Release

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for all labor and service provided, and all equipment and material delivered, to the customer on this job. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. This document is effective only on the claimant's receipt of payment from the financial institution on which the following check is drawn:

| | |
|---|---|
| Maker of the Check | RQ/Brasfield Gorrie JV |
| Amount of the Check | $ |
| Check Payable to: | |

### Exceptions

This document does not affect any of the following: Disputed claims for extras in the amount of: $ --0--

### Signature

| | |
|---|---|
| Claimant's Signature | |
| Claimant | |
| Claimant's Title | |
| Date of Signature | |

PLEASE SIGN & RETURN ORIGINAL

**RQ/Brasfield Gorrie JV**
**3194 Lionshead Avenue**
**Carlsbad, CA 92010**
**Ph 760-631-7707**
**Fx 760-631-8162**

# UNCONDITIONAL WAIVER AND RELEASE ON FINAL PAYMENT

### Pursuant to *California Civil Code* Section 8138

NOTICE TO CLAIMANT: THIS DOCUMENT WAIVES AND RELEASES LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS. THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID. IF YOU HAVE NOT BEEN PAID, USE A CONDITIONAL WAIVER AND RELEASE FORM.

**Identifying Information**

| | |
|---|---|
| Name of Claimant | |
| Name of Customer | RQ/Brasfield Gorrie JV |
| | N40085-11-C-4001 |
| Project | P-1322, P-1323 & P-1249 Wallace Creek BEQs & Armory |
| Job Location | MCB Camp Lejeune, NC |
| Owner | Department of the Navy |

**Unconditional Waiver and Release**

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for all labor and service provided, and all equipment and material delivered, to the customer on this job. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. The claimant has been paid in full.

**Exceptions**

This document does not affect the following: Disputed claims for extras in the amount of: $ __-0-__

**Signature**

| | |
|---|---|
| Claimant's Signature | |
| Claimant | |
| Claimant's Title | |
| Date of Signature | |

PLEASE SIGN & RETURN ORIGINAL

**RQ/Brasfield Gorrie JV**
**3194 Lionshead Avenue**
**Carlsbad, CA 92010**
**Ph 760-631-7707**
**Fx 760-631-8162**

PROJECT NAME/ LOCATION:   P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex
                          MCB, Camp Lejeune, NC

CONTRACT NUMBER:          N40085-11-C-4001
                          Job No. 11-4001

## SMALL BUSINESS PROGRAM COMPLIANCE

All subcontractors, except Small Business Concerns defined in FAR 52.219-9 (d), who receive subcontracts in excess of $650,000 ($1,500,000 for Construction), will be required to adopt and comply with a subcontracting plan that meets the requirements of this clause. Such plans will be reviewed to assure that all minimum requirements of an acceptable subcontracting plan have been satisfied.

The "individual contract plan" means a subcontracting plan that covers the entire contract period (including option period), applies to a specific contract, and has goals that are based on the offeror's planned subcontracting in support of the specific contract except that indirect costs incurred for common or joint purposes may be allocated on a prorated basis to the contract.

The plan shall be negotiated within the time specified by the Contracting Officer. The individual below shall be named as the Contractor's Contracting Officer.

Name:       Mitch Tharaldson

Title:      Contracting Officer

Address:    3194 Lionshead Avenue
            Carlsbad, CA 92010

Telephone:  760-631-7707

Fax:        760-945-4125

E-mail:     mtharaldson@rqconstruction.com

Subcontractor shall include all subcontracts that contribute to contract performance, and may include a proportionate share of products and services that are normally allocated as indirect costs.

Subcontractor assures that:

(i)     It will cooperate in any studies or surveys as may be required.

(ii)    It will submit such periodic reports and cooperate in any studies or surveys as may be required by the contracting agency or the Small Business Administration in order to determine the extent of compliance by the offeror with the subcontracting plan and with the clause entitled "Utilization of Small Business Concerns and Small Disadvantaged Business Concerns" contained in the contract.

(iii)   It will submit Standard ISR, Individual Subcontract Reports on the eSRS semi-annually and at contract completion. This report shall be submitted to the Contracting Officer and the SBLO Christie Dunckel, cdunckel@rqconstruction.com. The report shall cover subcontract award data related to this contract. This report is not required for commercial plans.

Page 1 of 2

Subcontractor's Initials

(iv)    It will submit Standard SSR, Summary Subcontract Report on the eSRS to the Contracting Officer and the SBLO, Christie Dunckel, at cdunckel@rqconstruction.com. This report encompasses all the contracts with the awarding agency. It must be submitted semi-annually for contracts with the Department of Defense and annually for contracts with civilian agencies. If the reporting activity is covered by a commercial plan, the reporting activity must report annually all subcontract awards under that plan. All reports submitted at the close of each fiscal year (both individual and commercial plans) shall include a breakout, in the Contractor's format, of subcontract awards, in whole dollars, to small disadvantaged business concerns by North American Industry Classification System (NAICS) Industry Subsector. For a commercial plan, the Contractor may obtain from each of its subcontractor under its predominant NAICS Industry Subsector.

(v)     It will submit ISR and/or SSR reports in accordance with the requirements of this clause. The reports shall provide information on subcontract awards to Small Businesses, Women-Owned Small Businesses, Veteran-Owned Small Businesses, Service-Disabled Veteran-Owned Small Businesses, Small Disadvantaged Businesses, HUBZone Small Businesses, and Historically Black Colleges and Universities and Minority Institutions. Reporting shall be in accordance with the instructions on the forms or as provided in agency regulations.



A Joint Venture

## SWPPP Notification to Subcontractor

Masterweave Commercial
8000-D East Brainerd Road
Chattanooga, TN 37421

Please be advised that the North Carolina Department of Environmental and Natural Resources (DENR) has begun formal implementation of the National Pollutant Discharge Elimination System (NPDES)

In short, the purpose of this system is to eliminate pollutants from entering into the storm drain systems and eventually into our lakes, streams, and ocean. Pollutants include, but are not limited to, oil, grease, trash, sediment, asphaltic emulsions, and cement wastes.

RQ/Brasfield Gorrie JV has developed a Storm Water Pollution Prevention Plan (SWPPP) in accordance with the State requirements.

You, as a subcontractor, are required to comply with the SWPPP and the General Permit for any work done on the site. Furthermore, your company agrees to indemnify and hold harmless RQ/Brasfield Gorrie JV, and its agents, officers, and employees for any damages or costs assessed against them as a result of your company's failure to comply with SWPPP and Best Management Practices (BMP) requirements.

Any person or group who violates any condition of the General Permit may be subject to substantial penalties in accordance with the law. You are encouraged to advise each of your employees working on this project of the SWPPP.

A copy of the General Permit and the SWPPP developed for this site are available for your review at the construction office.

Please call if you have any questions.

Sincerely,
RQ/Brasfield Gorrie JV

Mike Patterson
Executive Committee Member

Subcontractor's Initials

Attention:     All Subcontractors and Vendors:
Subject:       P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex, MCB, Camp Lejeune, NC
Re:            Introduction to RQ/Brasfield Gorrie JV's Flow & Problem Prevention (FPP) Project Delivery Program

Ladies and Gentlemen:

By contracting with RQ/Brasfield Gorrie JV on the subject project, you have become a partner in what we anticipate being a successful project and an enjoyable experience. The purpose of this correspondence is to introduce you to RQ/Brasfield Gorrie JV's unique project delivery method called FPP and to give you an idea of what to expect as we move forward together.

FPP is a collaborative approach to project delivery (project management) that maximizes the value to each stakeholder (you, your fellow subcontractors and vendors, the owner and RQ/Brasfield Gorrie JV) through operating in a transparent environment. In traditional project management, the General Contractor assumes a "command and control" role by creating and issuing the project schedule to the subcontractors and then "controls" the schedule through weekly foreman's meetings using the subcontract provisions as a "hammer" for non-or slow performance. The obvious problem with this approach is that critical input from you, the experts, who know and understand their business the best, is neither sought nor utilized. The schedule is created in a vacuum and managed devoid of collaborative planning. The result is false commitments, hidden agendas and poor overall project delivery,... all wasteful.

The foundational principle of FPP is collaborative preplanning and execution based upon co-creation of milestone schedules (work streams) and reliable commitments to that plan by all stakeholders. While the benefits are numerous, the most obvious are...

- Participation (and transparency) in team meetings will provide your foreman with all information necessary to prosecute his work in the most efficient, least wasteful manner possible, thereby increasing your profits. Your foreman will know and be able to count upon the commitments made by RQ/Brasfield Gorrie JV and all other sub-trades and the increased level of communication will result in fast identification and resolution of project issues.
- Participation will improve the quality of life for your people. Transparency breaks down hidden agendas that help to avoid conflicts, reducing contentiousness and aggravation.
- Participation will increase site safety through less hectic, better-organized work activity thereby reducing accidents and subsequent compensation claims.

This unique form of transparent, collaborative project management requires a high level of trust from each team member that is not prevalent in the construction industry. As such, you will be required to fully participate in the program. Your participation commitment consists of attendance by your foreman (or representative) in workstream building meetings that are held approximately once per month for one hour (or as required) to help plan the work. Daily meetings, approximately 15 – 20 minutes in length, are held to report on progress of the commitments made. It should be anticipated that the project team will ask for attendance at strategic pre-planning meetings prior to your work on site in order to plan how best to coordinate your work with all other trades. We have found this to be the most effective way to preplan work activities accurately and increase field efficiency. The team commits to a plan and holds each other accountable to those commitments and every stakeholder benefits.

Our experience has shown that most foremen, though resistant at first, quickly realize the benefits of participation in the program while owners sometimes view the time their foremen spend in the meetings as "unproductive". Even though participation is not an option on RQ/Brasfield Gorrie JV projects, we would prefer that all of the sub trades be willing "partners" in the program as the experience is so much more powerful and beneficial to all parties. I am positive that your willingness to "try something new" will produce great results.

Thank you in advance for your participation and partnership.

Mike Patterson
Executive Committee Member

Subcontractor's Initials

| Form **W-9** | **Request for Taxpayer** | Give Form to the |
|---|---|---|
| (Rev. December 2011)<br>Department of the Treasury<br>Internal Revenue Service | **Identification Number and Certification** | requester. Do not<br>send to the IRS. |

**Name (as shown on your income tax return)**
Masterweave Commercial LLC

**Business name/disregarded entity name, if different from above**

**Check appropriate box for federal tax classification:**

☐ Individual/sole proprietor ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate

☒ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ P

☐ Other (see instructions) ▶

☐ Exempt payee

**Address (number, street, and apt. or suite no.)**
8000 EAST Brainerd Rd Ste. 118

**Requester's name and address (optional)**

**City, state, and ZIP code**
Chattanooga TN 37421

**List account number(s) here (optional)**

*Print or type*
*See Specific Instructions on page 2.*

---

## Part I — Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Note. If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number**

| | | | – | | | – | | | | |

**Employer identification number**

| 2 | 7 | – | 3 | 5 | 8 | 1 | 3 | 0 | 5 |

---

## Part II — Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

| **Sign**<br>**Here** | Signature of<br>U.S. person ▶ | *M H Tay* | Date ▶ 2-27-13 |
|---|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

Note. If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

# CAMP LEJEUNE
## CONTRACTOR BADGE

You need a badge to work on Camp Lejeune. This is the first thing that you need to do. There are no exceptions to this requirement. The government WILL ask for presentation of contractor badges on a random basis during work and may do so at any time. If you do not have a badge you may be permanently removed from the base. Here's the easiest way we've found to get one:

**Overview:**
- Collect ALL the information required
- Get a ride to the badge office with someone who has already registered their vehicle on base

**Where to go:**
Contractor Badges are processed in Building 60, Room 143
Open 7AM to 1:30 PM Monday thru Friday
Hint: The office is least crowded after 8:30 AM
(Note: The attached map showing the location of Building 60 is not to scale.
Continue straight through the main gate for about 4 miles on Holcomb Road before you turn right on Molly Pitcher as shown)

**What to bring:**
(We will give all of this to you)
1 Award letter
2 Vehicle Pass Letter
3 Company Sponsorship letter


## YOU MUST PROVIDE ALL OF THE FOLLOWING DOCUMENTS:

**1 LETTER FROM YOUR COMPANY on letterhead listing you as an employee and requesting access**
**2 PROOF OF CITIZENSHIP (Passport, SS card or birth cert.)**
**3 VALID PHOTO ID (Driver's license, State ID)**
**4 50 STATE BACK GROUND CRIMINAL CHECK: Required for all contractors. No prior or pending criminal charges.**

Here is a list of possible resources for a 50 state background check.
Hint: With IntegraScan results are immediate
County Courthouse Infolink Screening Services, Inc.
(www.infolinkscreening.com) IntegraScan Criminal Records
Checks (www.integrascan.com) Intelius Employee Screening
(www.intelius.com) Castle Branch (www.castlebranch.com)

**DIRECTIONS TO BUILDING 60** CONTRACTOR BADGE AND
VEHICLE REGISTRATION OFFICES CAMP LEJEUNE, NC

From Wilmington International Airport When leaving the airport, head West on
Airport Blvd towards Trask Drive/Dolan Drive. Turn left onto N 23rd Street.
Follow N 23rd Street for two miles, then turn left onto Market Street/US-17US-74.
Follow US-17 North for 50 miles. Make slight right onto NC-24 East as you follow
signs for Camp Lejeune Main Gate. Enter Camp Lejeune Visitor Center to obtain
base vehicle pass. Continue through main gate down Holcomb Boulevard for
approximately 4.6 miles. Turn right onto Molly Pitcher Road. Continue on Molly
Pitcher Road for approximately 0.2 miles. Building 60 will be on the left side of
the road. Additional parking is across the street on the right side of the road.

From Raleigh-Durham International Airport When leaving the airport, follow signs
for I-40 East. Take I-40 East to Exit 373 and NC Highway 24 East. Follow
Highway 24 East to Jacksonville and the Camp Lejeune Main Gate. Enter Camp
Lejeune Visitor Center to obtain base vehicle pass. Continue through main gate
down Holcomb Boulevard for approximately 4.6 miles. Turn right onto Molly
Pitcher Road. Continue on Molly Pitcher Road for approximately 0.2 miles.
Building 60 will be on the left side of the road. Additional parking is across the
street on the right side of the road.

# CAMP LEJEUNE BASE VEHICLE REGISTRATION

First, get your contractor badge. Once you have obtained your contractor's badge, you may register your vehicle. You can use your contractor's badge at the Main Gate visitor's center to obtain a temporary pass to enter the base with your vehicle and complete your registration. The Vehicle Registration Office is located in Building 60 on Molly Pitcher Rd. Hours of operation:0730-1700 Monday thru Friday.

## Registration Requirements:
The following are the different classifications of vehicles on base and the requirements for each:

### Privately Owned Vehicle: (POV)
• You do NOT need to register the vehicle in NC.
• You must have the vehicle with you in order to register. (The vehicle registration office will need to see the vehicle and place your registration/ base access sticker on the windshield.)
POV must have the following:
• A Drivers License
Vehicle Registration: Must be an original and in your name (see note example #1.)
Proof of Insurance (Must meet NC minimum $30,000/$60,000 for bodily injury and $25,000 for property damage.)
• Completed MCB FORM 5512/43 (at the registration office)
• Contractor package with letters.

### Rental Cars (only available for travel to base less than 3 days):
• Stop at visitor center and obtain a temporary vehicle pass using your contractor badge.
• Proof of Insurance (must meet NC minimum $30,000/$60,000 for bodily injury and $25,000 for property damage.)
• Rental Agreement for the vehicle.

### Company Vehicles:
• Copy of registration
• Proof of Insurance (must meet NC minimum $30,000/$60,000 for bodily injury and $25,000 for property damage.)
• Completed MCB FORM 5512/43 (you do this at the office)
• Contractor package with letters.

**Notes:**
If the registration/insurance of the vehicle is in someone else's name, they must be either present with you and be able to provide identification or you have to have a notarized letter stating you have permission to drive the vehicle.
**Example 1:** If your personal vehicle (POV) is registered to another individual like your spouse, child, parent, etc. and not in your name, that person must state in writing that you can drive their vehicle. You need to have a signed original letter with you for registration and in the car with you when you are driving on base showing that you are driving with the registered owner's permission.
**Example 2:** If you are using a company vehicle on base as a "utility truck" driven by various employees, you must have an original letter signed by a company officer/owner listing first and last names of all employees authorized to drive said vehicle.

**Some other general rules about driving on base (If you get even one ticket you can be denied access to the base by security-So be careful):**
• Do not talk on your cell phone while driving. Only hands free devices are allowed.
• Do not speed. Speeders lose their driving privileges.
• Always wear your seat belt.
• If dark, as a courtesy, please turn headlights off when pulling up to the guard station.

**PROJECT NAME/LOCATION:**     P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex
                                      MCB, Camp Lejeune, NC

**CONTRACT NUMBER:**           N40085-11-C-4001
                                      **Job No. 11-4001**

## LEED REQUIRED DOCUMENTS

1. LEED Recycled Letter
2. LEED Regional Letter
3. LEED EQ Credit 4.1 VOC-Letter
4. LEED Low Emitting Materials-Carpet Systems
5. LEED Low Emitting Materials-Wood & Agrifiber Products
6. LEED FSC Wood
7. LEED EQ Credit 4.2 Low Emitting Materials-Paints & Coatings

Subcontractor's Initials

Case 3:15-cv-00256-GCM   Document 1-2   Filed 06/09/15   Page 28 of 68

{Insert Letterhead}

{Insert Date)

**TO:**   RQ/Brasfield Gorrie JV

**SUBJECT:**   Regional Materials

**PROJECT:**   P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex
MCB, Camp Lejeune, NC

To Whom It May Concern:

By virtue of this letter, (Insert Subcontractor Name) hereby certifies that the following list
includes all materials installed at the T P-1322, P1323 & P1249 Wallace Creek BEQ/Armory
Complex
MCB, Camp Lejeune, NC and that the materials listed below were extracted and manufactured
within 500 miles of the project location.

| Product Name | Manufacturer | Total product Cost | Percent Compliant | Compliant product value | Harvest Distance from project site | Manuf. Distance |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

*Percent Compliant = Percent of Product That Meets Both Extraction and Manufacture Criteria
(% by Weight)*
*Compliant Product Value = Total Product Cost x Percent of Qualifying Product*
*Harvest Distance = Distance Between Project and Extraction/Harvest/Recovery Site (miles)*
*Manufacture Distance = Distance Between Project and Final Manufacturing Location (miles)*

(Insert any comments here)

Sincerely,

(Signature Here)

(Name)
(Company)
(Position)

(Insert Letterhead)

(Insert Date)

TO:   RQ/Brasfield Gorrie JV

**SUBJECT:**   Recycled Content in Material Sources

PROJECT:   P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex
MCB, Camp Lejeune, NC

To Whom It May Concern:

By virtue of this letter, (Insert Subcontractor Name) hereby certifies that the following list include all the materials installed at the P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex and that these materials meet the corresponding recycled content percentages listed below:

| Material Name | Manufacturer | Material Cost | Post-Consumer Recycled Content % | Pre-Consumer Recycled Content % | Recycled Content Information Source |
|---|---|---|---|---|---|
| | | | % | % | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

(Insert any comments here)

Regards,

(Signature Here)

(Name)
(Company)
(Position)

(Insert Letterhead)


(Insert Date)

TO:   RQ/Brasfield Gorrie JV

SUBJECT:   LOW EMITTING MATERIALS – CARPET SYSTEMS

**PROJECT:**  P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex
MCB, Camp Lejeune, NC

To Whom It May Concern:

By virtue of this letter, (Insert Subcontractor Name) hereby certifies that the following list of carpets are in compliance with the CRI Green Label Plus Program and were installed at the P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex MCB, Camp Lejeune, NC

| Product Name | Manufacturer | Does product meet CRI Green Label Plus Program? | Source of Compliance Statement (Please attach) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

*The Source of Compliance should be a Letter from the Manufacturer, but can also be a Material Data Sheet*

All sealed concrete or tile or any other flooring system used in the project that is not carpet must be FloorScore certified as compliant with California Section 01350 for low VOC emission. Please attach relevant MSDS sheet showing compliance

(insert any comments here)


Sincerely,

(Signature Here)

(Name)
(Company)
(Position)

(Insert Letterhead)


(Insert Date)

TO:   RQ/Brasfield Gorrie JV

SUBJECT:   LOW EMITTING MATERIALS – WOOD & AGRIFIBER PRODUCTS

**PROJECT:**  P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex
MCB, Camp Lejeune, NC

To Whom It May Concern:

By virtue of this letter, (Insert Subcontractor Name) hereby certifies that the following list of
wood and agrifiber products contain no added urea-formaldehyde resins and are installed at the
P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex
MCB, Camp Lejeune, NC

| Product Name | Manufacturer | No-Added Urea-formaldehyde resins? | Source of Compliance Statement (Please attach) |
|---|---|---|---|
| | | | |
| | | | |

*The Source of Compliance can be a Letter from the Manufacturer or a Material Data Sheet*


(Insert any comments here)


Sincerely,

(Signature Here)

(Name)
(Company)
(Position)

(Insert Letterhead)


(Insert Date)

**TO:**   RQ/Brasfield Gorrie JV

**SUBJECT:**   FSC Wood

PROJECT:   P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex
MCB, Camp Lejeune, NC

To Whom It May Concern:

By virtue of this letter, (Insert Subcontractor Name) hereby certifies that the following list of
items are FSC certified and were installed at the P-1322, P1323 & P1249 Wallace Creek
BEQ/Armory Complex
MCB, Camp Lejeune, NC

| Product Name | Manufacturer | COC certification number | Percent Compliant [%] | Compliant product value [$] | Harvest Distance from project site [mi] | Manuf. Distance[mi] |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

*Percent Compliant = Percent of Product That is FSC certified (% by Weight)*
*Compliant Product Value = Total Product Cost x Percent of Qualifying Product*
*Harvest Distance = Distance Between Project and Extraction/Harvest/Recovery Site (miles)*
*Manufacture Distance = Distance Between Project and Final Manufacturing Location (miles)*

**Please also include an invoice with this letter. Please make sure that the invoice has the
COC number written on it.**

(Insert any comments here)


Sincerely,

(Signature Here)

(Name)
(Company)
(Position)

Item
No.
21.c.

EQ Credit 4.1: Low-Emitting Materials: Adhesives & Sealants - P-1322, P1323 & P1249
Wallace Creek BEQ/Armory Complex
MCB, Camp Lejeune, NC

Manufacturer -
Division Number
Product Name/Model -

*Material - Choose from Below*

| | Architectural Applications | VOC Limit [g/L less water] SCAQMD | VOC in Product |
|---|---|---|---|
| ☐ | Indoor Carpet Adhesives | 50 | |
| ☐ | Carpet Pad Adhesives | 50 | |
| ☐ | Wood Flooring Adhesives | 100 | |
| ☐ | Rubber Floor Adhesives | 60 | |
| ☐ | Subfloor Adhesives | 50 | |
| ☐ | Ceramic Tile Adhesives | 65 | |
| ☐ | VCT & Asphalt Adhesives | 50 | |
| ☐ | Drywall & Panel Adhesives | 50 | |
| ☐ | Cove Base Adhesives | 50 | |
| ☐ | Multipurpose Construction Adhesives | 70 | |
| ☐ | Structural Glazing Adhesives | 100 | |
| | Specialty Applications | VOC Limit [g/L less water] | VOC in Product |
| ☐ | PVC Welding | 510 | |
| ☐ | CPVC Welding | 490 | |
| ☐ | ABS Welding | 325 | |
| ☐ | Plastic Cement Welding | 250 | |
| ☐ | Adhesive Primer for Plastic | 550 | |
| ☐ | Contact Adhesive | 80 | |
| ☐ | Special Purpose Contact Adhesive | 250 | |
| ☐ | Structural Wood Member Adhesive | 140 | |
| ☐ | Sheet Applied Rubber Lining Operations | 850 | |
| ☐ | Top & Trim Adhesive | 250 | |
| | Sealants | VOC Limit [g/L less water] | VOC in Product |
| ☐ | Architectural | 250 | |
| ☐ | Nonmembrane Roof | 300 | |
| ☐ | Roadway | 250 | |
| ☐ | Single-Ply Roof Membrane | 450 | |
| ☐ | Other | 420 | |
| | Substrate Specific Applications | VOC Limit [g/L less water] | VOC in Product |
| ☐ | Metal to Metal | 30 | |
| ☐ | Plastic Foams | 50 | |
| ☐ | Porous Material (except wood) | 50 | |
| ☐ | Wood | 30 | |
| ☐ | Fiberglass | 80 | |
| | Sealant Primers | VOC Limit [g/L less water] | VOC in Product |
| ☐ | Architectural Non Porous | 250 | |
| ☐ | Architectural Porous | 775 | |
| ☐ | Other | 750 | |
| | Aerosol Adhesives: | VOC Weight [g/L minus water] | VOC in Product |
| ☐ | General purpose mist spray | 65% VOCs by weight | |
| ☐ | General purpose web spray | 55% VOCs by weight | |
| ☐ | Special purpose aerosol adhesives (all types) | 70% VOCs by weight | |

Item No. 21.g.

EQ Credit 4.2: Low-Emitting Materials: Paints & Coatings - P-1322, P1323 & P1249 Wallace Creek BEQ/Armory Complex
MCB, Camp Lejeune, NC

**Manufacturer -**
**Division Number**
**Product Name/Model -**

*Material - Choose from Below*

| | Architectural Applications - Interior walls and ceilings | VOC Limit [g/L] | VOC in Product |
|---|---|---|---|
| ☐ | Flats | 50 | |
| ☐ | Non Flats | 150 | |
| ☐ | Anti Corrosive and Anti Rust paints | VOC Limit [g/L] per Greenseal std | VOC in Product |
| ☐ | Paints | 250 | |
| | Floors and other interior elements | VOC Limit [g/L less water] | VOC in Product |
| ☐ | Clear wood finishes: varnish | 350 | |
| ☐ | Clear wood finishes: lacquer | 550 | |
| ☐ | Floor coatings | 100 | |
| ☐ | Sealers: waterproofing sealers | 250 | |
| ☐ | sanding sealers | 275 | |
| ☐ | All other sealers | 200 | |
| ☐ | Shellacs: Clear | 730 | |
| ☐ | Shellacs: Pigmented | 550 | |
| ☐ | Stains | 250 | |

# EXHIBIT A2

# Change Order

RQ/Brasfield Gorrie JV
3194 Lionshead Avenue
Carlsbad, CA 92010

| Distribution | | |
|---|---|---|
| | Masterweave Commercial, LLC | |
| | Office | |
| | Field | |
| | Other | |

| | | | | |
|---|---|---|---|---|
| Project: | 11-4001- | P-1322, P-1323 & P-1249 Wallace Creek | Subcontract #: 11-4001056 | |
| | | 3194 Lionshead Avenue | Subcontract Change Order #: 1 | |
| | | Carlsbad, CA 92010 | Description: DuraSkimm Coat | |
| To (Subcontractor): | | Masterweave Commercial, LLC | Owner Change Order #: | |
| | | 8000-D East Brainerd Road | Change Order Date: 5/10/13 | |
| | | Chattanooga, TN 37421 | Reference: | |
| | | | Change Order Page: 1 | |

You are directed to make the following changes in this SubContract:

| Subct Item | C.O. Item | Contract Item | Phase | Description | Units | U/M | Unit Price | Amount |
|---|---|---|---|---|---|---|---|---|
| 2 | | 1 | 99100. | DuraSkimm Coat | 0.000 | LS | 0.00000 | 106,646.00 |

Sub CO Detail Notes: Subcontractor will supply and install the TWI DuraSkimm coat in lieu of Heavy Duty Block Filler at the interior CMU walls. Subcontractor will ensure that end product quality matches the approved mock-up.

CALCULATION

| | | |
|---|---|---|
| Labor | $ | 55,974.00 |
| Material | $ | 47,977.00 |
| Bond Premium | $ | 2,695.00 |
| | | |
| TOTAL | $106,646.00 | |

Subcontractor to provide consent of surety due to new contract amount of $1,081,867.00.

Received

MAY 14 2013

RQ Construction, LLC

| | |
|---|---|
| Total | 106,646.00 |

Not valid until signed by both the Subcontractor and Contractor. Signature of the Subcontractor indicates the Subcontractor's agreement herewith, including any adjustment in the Subcontract Sum or Time.

| | |
|---|---|
| The original Subcontract Sum was . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 975,221.00 |
| The net change by previously authorized Change Orders was . . . . . . . . . . . . . . . . | 0.00 |
| The Subcontract Sum prior to this Change Order was . . . . . . . . . . . . . . . . . . . . | 975,221.00 |
| The Subcontract Sum will be increased by this Change Order . . . . . . . . . . . . . | 106,646.00 |
| The new Subcontract Sum will be . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1,081,867.00 |

Authorized By Contractor:

RQ/Brasfield Gorrie JV
3194 Lionshead Avenue
Carlsbad CA 92010

By: _____

Date: 05/14/13

Accepted By Subcontractor:

Masterweave Commercial, LLC
8000-D East Brainerd Road
Chattanooga, TN 37421

By: _____

Date: 5-14-13

Case 3:15-cv-00256-GCM   Document 1-2   Filed 06/09/15   Page 37 of 68

# EXHIBIT A3

# Change Order

RQ/Brasfield Gorrie JV
3194 Lionshead Avenue
Carlsbad, CA 92010

| Distribution | | |
|---|---|---|
| | ☐ | Masterweave Commercial, LLC |
| | ☐ | Office |
| | ☐ | Field |
| | ☐ | Other |

| | | | |
|---|---|---|---|
| Project: | 11-4001- | P-1322, P-1323 & P-1249 Wallace Creek BE | Subcontract #: 11-4001056 |
| | | 3194 Lionshead Avenue | Subcontract Change Order #: 2 |
| | | Carlsbad, CA 92010 | Description: Parking Deck Striping |
| To (Subcontractor): | | Masterweave Commercial, LLC | Owner Change Order #: |
| | | 8000-D East Brainerd Road | Change Order Date: 9/9/13 |
| | | Chattanooga, TN 37421 | Reference: |
| | | | Change Order Page: 1 |

You are directed to make the following changes in this SubContract:

| Subct Item | C. O. Item | Contract Item | Phase | Description | Units | U/M | Unit Price | Amount |
|---|---|---|---|---|---|---|---|---|
| 15 | 1 | 99100. | | Parking Deck Striping | 0.000 | LS | 0.00000 | 10,505.00 |

Sub CO Detail Notes: *Subcontractor is responsible to provide all labor, equipment, materials, and supervision necessary to complete the Parking Deck Striping and Basketball Court Markings portion of this project in strict accordance with the Contract Documents including all applicable codes and referenced standards for the project.*

*Scope of Work includes (not limited to):*
*All Parking deck striping*
*All Basketball Court (2) Markings*

*CALCULATION*

*Striping & Court Marking $10,239.50*
*Bond Premium     $   265.50*

*TOTAL          $10,505.00*

SEP 2 3 2013

| | |
|---|---|
| **Total** | 10,505.00 |

Not valid until signed by both the Subcontractor and Contractor. Signature of the Subcontractor indicates the Subcontractor's agreement herewith, including any adjustment in the Subcontract Sum or Time.

| | |
|---|---|
| The original Subcontract Sum was . . . . . . . . . . . . . . . . . . . . . | 975,221.00 |
| The net change by previously authorized Change Orders was . . . . . . . . . . . . . . . . | 106,646.00 |
| The Subcontract Sum prior to this Change Order was . . . . . . . . . . . . . . . . . . . . | 1,081,867.00 |
| The Subcontract Sum will be increased by this Change Order . . . . . . . . . . . | 10,505.00 |
| The new Subcontract Sum will be . . . . . . . . . . . . . . . . . . . . . . . . . . | 1,092,372.00 |

**Authorized By Contractor:**

RQ/Brasfield Gorrie JV
3194 Lionshead Avenue
Carlsbad, CA 92010

By: _____

Date: _____

**Accepted By Subcontractor:**

Masterweave Commercial, LLC
8000-D East Brainerd Road
Chattanooga, TN 37421

By: _____

Date: 9-23-13

Case 3:15-cv-00256-GCM   Document 1-2   Filed 06/09/15   Page 39 of 68

# EXHIBIT A4

BRASFIELD
& GORRIE

# Change Order

RQ/Brasfield Gorrie JV
3194 Lionshead Avenue
Carlsbad, CA 92010

| Distribution | | |
|---|---|---|
| | ☐ | Masterweave Commercial, LLC |
| | ☐ | Office |
| | ☐ | Field |
| | ☐ | Other |

| | | | |
|---|---|---|---|
| Project: | 11-4001- | P-1322, P-1323 & P-1248 Wallace Creek BEQs & | Subcontract #: 11-4001056 |
| | | 3194 Lionshead Avenue | Subcontract Change Order #: 3 |
| | | Carlsbad, CA 92010 | Description: Field Order Tickets (8/15/2013 to 8/26/2013) |
| To (Subcontractor): | | Masterweave Commercial, LLC | Owner Change Order #: |
| | | 8000-D East Brainerd Road | Change Order Date: 9/10/13 |
| | | Chattanooga, TN 37421 | Reference: |
| | | | Change Order Page: 1 |

You are directed to make the following changes in this SubContract

| Subct Item | C.O. Item | Contract Item | Phase | Description | Units | U/M | Unit Price | Amount |
|---|---|---|---|---|---|---|---|---|
| 16 | | 1 | 99100. | Field Order Tickets (8/15/2013 to 8/26/2013) | 0.000 | LS | 0.00000 | 2,237.00 |

Sub CO Detail Notes: Change order incorporates all costs associated with the extra work in Field Order #1. Field Order #1 includes all Field order tickets through August 27th, 2013. The work included the painting of brick lintels prior to installation and the installation of Blue Sealer on windows.

CALCULATION

| | |
|---|---|
| 57 man-hours & material Bond Premium Included | $2,237.00 |
| TOTAL | $2,237.00 |

SEP 2 3 2013

| | |
|---|---|
| **Total** | 2,237.00 |

Not valid until signed by both the Subcontractor and Contractor. Signature of the Subcontractor indicates the Subcontractor's agreement herewith, including any adjustment in the Subcontract Sum or Time.

| | |
|---|---|
| The original Subcontract Sum was . . . . . . . . . . . . . . . . . . . . . . . . . . . | 975,221.89 |
| The net change by previously authorized Change Orders was . . . . . . . . . . . . . . . . | 117,151.00 |
| The Subcontract Sum prior to this Change Order was . . . . . . . . . . . . . . . . . . . | 1,092,372.00 |
| The Subcontract Sum will be increased by this Change Order . . . . . . . . . . . | 2,237.00 |
| The new Subcontract Sum will be . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1,094,609.00 |

| Authorized By Contractor: | Accepted By Subcontractor: |
|---|---|
| RQ/Brasfield Gorrie JV | Masterweave Commercial, LLC |
| 3194 Lionshead Avenue | 8000-D East Brainerd Road |
| Carlsbad, CA 92010 | Chattanooga, TN 37421 |
| By: | By: |
| Date: 09/23/2013 | Date: 9-23-13 |

Case 3:15-cv-00256-GCM   Document 1-2   Filed 06/09/15   Page 41 of 68

# EXHIBIT A5

# Change Order

RQ/Brasfield Gorrie JV
3194 Lionshead Avenue
Carlsbad, CA 92010

Distribution
| ✓ | Masterweave Commercial, LLC |
| ✓ | Office |
| ✓ | Field |
| ✓ | Other |

| Project: | 11-4001- | P-1322, P-1323 & P-1249 Wallace Creek BE | Subcontract #: 11-4001056 |
| | | 3194 Lionshead Avenue | Subcontract Change Order #: 4 |
| | | Carlsbad, CA 92010 | Description: Field Order Tickets (9/6/2013 to 9/30/2013) |
| To (Subcontractor): | | Masterweave Commercial, LLC | Owner Change Order #: |
| | | 8000-D East Brainerd Road | Change Order Date: 10/9/13 |
| | | Chattanooga, TN 37421 | Reference: |
| | | | Change Order Page: 1 |

You are directed to make the following changes in this SubContract:

| Subct Item | C. O. Item | Contract Item | Phase | Description | Units | U/M | Unit Price | Amount |
|---|---|---|---|---|---|---|---|---|
| 17 | 1 | | 99100. | Field Order Tickets (9/6/2013 to 9/30/2013) | 0.000 | LS | 0.00000 | 1,276.86 |

Sub CO Detail Notes: *Change order incorporates all costs associated with the extra work in Field Order #2. Field Order #2 includes all lintel and Blue Sealer Field order tickets through September 30th, 2013. The work included the painting of brick lintels prior to installation and the installation of Blue Sealer on windows.*

CALCULATION

| 32 man-hours & material | $1,244.50 |
| Bond Premium | $ 32.36 |
| TOTAL | $1,276.86 |

## Received

## OCT 15 2013

## RQ Construction, LLC

| Total | 1,276.86 |

Not valid until signed by both the Subcontractor and Contractor. Signature of the Subcontractor indicates the Subcontractor's agreement herewith, including any adjustment in the Subcontract Sum or Time.

| The original Subcontract Sum was . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 975,221.00 |
| The net change by previously authorized Change Orders was . . . . . . . . . . . . . . . | 119,388.00 |
| The Subcontract Sum prior to this Change Order was . . . . . . . . . . . . . . . . . . . | 1,094,609.00 |
| The Subcontract Sum will be increased by this Change Order . . . . . . . . . . . . | 1,276.86 |
| The new Subcontract Sum will be . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1,095,885.86 |

Authorized By Contractor:

RQ/Brasfield Gorrie JV
3194 Lionshead Avenue
Carlsbad, CA 92010

By: _____
Date: 10/15/2013

Accepted By Subcontractor:

Masterweave Commercial, LLC
8000-D East Brainerd Road
Chattanooga, TN 37421

By: _____
Date: 10-14-13

Case 3:15-cv-00256-GCM   Document 1-2   Filed 06/09/15   Page 43 of 68

# EXHIBIT A6

# Change Order

**RQ/Brasfield Gorrie JV**
3194 Lionshead Avenue
Carlsbad, CA 92010

| Distribution | | |
|---|---|---|
| | ☐ | Masterweave Commercial, LLC |
| | ☐ | Office |
| | ☐ | Field |
| | ☐ | Other |

Project: 11-4001-   P-1322, P-1323 & P-1249 Wallace Creek BE   Subcontract #: 11-4001056
3194 Lionshead Avenue                       Subcontract Change Order #: 5
Carlsbad, CA 92010                          Description:   Field Work Orders and Parking Deck Credit

To (Subcontractor):   Masterweave Commercial, LLC      Owner Change Order #:
8000-D East Brainerd Road                        Change Order Date: 5/3/14
Chattanooga, TN 37421                            Reference:
                                                 Change Order Page: 1



You are directed to make the following changes in this SubContract:

| Subct. Item | C. O. Item | Contract Item | Phase | Description | Units | U/M | Unit Price | Amount |
|---|---|---|---|---|---|---|---|---|
| 18 | 1 | | 99100. | Field Work Orders & Parking Deck Credit | 0.000 | LS | 0.00000 | 33,945.14 |

Sub CO Header Notes: *Change Order incorporates field work orders #3,4,5,6,7,8,9,10,11,12,13 as well as Advances Exterior Systems' schedule impacts.*

Calculation:
FWO #3 - $1,906.31
FWO #4 - $576.61
FWO #5 - $571.69
FWO #6 - $351.41
FWO #7 - $249.57
FWO #8 - $249.57
FWO #9 - $606.49
FWO #10 - $1,232.23
FWO #11 - $508.90
FWO #12 - $81.57
FWO #13 - $105.17
AES Schedule Impact - $35,831
Parking Deck Credit - ($9,183.00)
Subtotal = $33,087.52
Bond (2.592%) = $857.62

TOTAL: $33,945.14

**Received**

**MAY 0 3 2014**

Total                                                           33,945.14

Not valid until signed by both the Subcontractor and Contractor. Signature of the Subcontractor indicates the
Subcontractor's agreement herewith, including any adjustment in the Subcontract Sum or Time.

| | |
|---|---|
| The original Subcontract Sum was . . . . . . . . . . . . . . . . . . . . . . | 975,221.00 |
| The net change by previously authorized Change Orders was . . . . . . . . . . . . . . . . . | 120,664.86 |
| The Subcontract Sum prior to this Change Order was . . . . . . . . . . . . . . . . . | 1,095,885.86 |
| The Subcontract Sum will be increased by this Change Order . . . . . . . . . . . | 33,945.14 |
| The new Subcontract Sum will be . . . . . . . . . . . . . . . . . . . . . . . | 1,129,831.00 |

**Authorized By Contractor:**
RQ/Brasfield Gorrie JV
3194 Lionshead Avenue
Carlsbad, CA 92010

By:
Date: 5/28/14

**Accepted By Subcontractor:**
Masterweave Commercial, LLC
8000-D East Brainerd Road
Chattanooga, TN 37421

By:
Date: 3-28-14

Case 3:15-cv-00256-GCM   Document 1-2   Filed 06/09/15   Page 45 of 68

# EXHIBIT B

SUBCONTRACT PERFORMANCE
BOND

KNOW ALL MEN BY THESE PRESENTS,

That <u>MASTERWEAVE COMMERCIAL, LLC, 8000 East Brainard Rd., Suite 118, Chattanooga, TN 37421</u>
(Here insert the name and address, or legal title, of the Subcontractor)

as Principal, hereinafter called Principal and <u>RLI INSURANCE COMPANY</u> a <u>IL</u> corporation, as Surety, hereinafter
called the Surety, are held and firmly bound unto <u>RQ/Brasfield Gorrie JV  3194 Lionshead Avenue, Carlsbad, CA</u>
<u>92010</u>

(Here insert the name and address, or legal title of the General Contractor)

as Obligee, hereinafter called the Obligee, in the amount of <u>NINE HUNDRED SEVENTY FIVE THOUSAND TWO</u>
<u>HUNDRED TWENTY ONE AND 00/100</u> Dollars ($ <u>$975,221.00</u>), for the payment whereof Principal and Surety bind
themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these
presents.

WHEREAS, the Principal has by written agreement dated <u>2/18/2013</u> entered into a subcontract with Obligee for
<u>Subcontract Agreement No. 11-4001056; Contract No. N40085-11-C-4011; Painting and Plaster for P-1322, P-</u>
<u>1323 & P-1249 Wallace Creek BEQs & Armory Camp Lejeune, NC 28547;</u> in accordance with drawings and
specifications prepared by                                    (Here insert full name and title)
which subcontract is by reference made a part hereof, and is hereinafter referred to as the subcontract. NOW,
THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly and faithfully perform
said subcontract then this obligation shall be null and void; otherwise it shall remain in full force and effect. Whenever
Principal shall be, and be declared by Obligee to be in default under the subcontract, the Obligee having performed
Obligee's obligation thereunder:
(1)  Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;
(2)  Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the
performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;
(3)  The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of
completing performance of the subcontract. If completed by the Obligee, and the reasonable cost exceeds the
balance of the subcontract price the Surety shall pay the Obligee such excess, but in no event shall the aggregate
liability of the Surety exceed the amount of this bond. If the Surety arranges completion or remedies the default, that
portion of the balance of the subcontract price as may be required to complete the subcontract or remedy the default
and to reimburse the Surety for its outlays shall be paid to the Surety at the times and in the manner as said sums
would have been payable to Principal had there been no default under the subcontract. The term "balance of the
subcontract price", as used in this paragraph, shall mean the total amount payable by Obligee to Principal under the
subcontract and any amendments thereto, less the amounts heretofore properly paid by Obligee under the
subcontract.
Any suit under this bond must be instituted before the expiration of one year from date on which final payment under
the subcontract falls due.
No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee
named herein or the heirs, executors, administrators or successors of the Obligee.

Signed and sealed this <u>19th</u> day of <u>April, 2013</u>

IN THE PRESENCE OF:

_____                          <u>MASTERWEAVE COMMERCIAL, LLC</u>
Witness                                                                    (Principal)

                                                                _____ (Seal)

_____                          RLI INSURANCE COMPANY
Witness
                                                                By _____
                                                                Phillip H. Condra, attorney-in-fact
                                                                Bonds Southeast, Inc.
                                                                1030 17th Avenue South
                                                                Nashville, Tennessee 37212
                                                                (615) 321-9700



**RLI** Surety
P.O. Box 3967 | Peoria, IL 61612-3967
Phone: (800) 645-2402 | Fax: (309) 683-1610

# POWER OF ATTORNEY
## RLI Insurance Company

*Know All Men by These Presents:*

That this Power of Attorney is not valid or in effect unless attached to the bond which it authorizes executed, but may be detached by the approving officer if desired.

That RLI Insurance Company, an Illinois corporation, does hereby make, constitute and appoint:
Gregory E. Nash, Phillip H. Condra, Kelly L. Berry, jointly or severally.

in the City of _____Nashville_____, State of _____Tennessee_____ its true and lawful Agent and Attorney in Fact, with full power and authority hereby conferred, to sign, execute, acknowledge and deliver for and on its behalf as Surety, the following described bond.

    Any and all bonds, undertakings, and recognizances in an amount not to exceed Ten Million Dollars ($10,000,000) for any single obligation.

The acknowledgment and execution of such bond by the said Attorney in Fact shall be as binding upon this Company as if such bond had been executed and acknowledged by the regularly elected officers of this Company.

The RLI Insurance Company further certifies that the following is a true and exact copy of the Resolution adopted by the Board of Directors of RLI Insurance Company, and now in force to-wit:

"All bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys in Fact or Agents who shall have authority to issue bonds, policies or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

IN WITNESS WHEREOF, the RLI Insurance Company has caused these presents to be executed by its ___Vice President___ with its corporate seal affixed this __21st__ day of __August__, __2007__.

State of Illinois   }
            } SS
County of Peoria  }

RLI Insurance Company

By: _____
    Roy C. Die            Vice President

On this __21st__ day of __August__, __2007__ before me, a Notary Public, personally appeared ___Roy C. Die___, who being by me duly sworn, acknowledged that he signed the above Power of Attorney as the aforesaid officer of the RLI Insurance Company and acknowledged said instrument to be the voluntary act and deed of said corporation.

By: *Cherie L Montgomery*
    Cherie L. Montgomery         Notary Public

**CERTIFICATE**

I, the undersigned officer of RLI Insurance Company, a stock corporation of the State of Illinois, do hereby certify that the attached Power of Attorney is in full force and effect and is irrevocable; and furthermore, that the Resolution of the Company as set forth in the Power of Attorney, is now in force. In testimony whereof, I have hereunto set my hand and the seal of the RLI Insurance Company this 19th day of __April__, __2013__.

RLI Insurance Company

By: _____
    Roy C. Die            Vice President

4150441020208

A0059207

# EXHIBIT C

SUBCONTRACT
LABOR AND MATERIAL
PAYMENT BOND

Bond NO. SSB0420787

KNOW ALL MEN BY THESE PRESENTS,

That MASTERWEAVE COMMERCIAL, LLC, 8000 East Brainard Rd., Suite 118, Chattanooga, TN 37421
(Here insert the name and address, or legal title, of the Subcontractor)

as Principal, hereinafter called Principal and RLI INSURANCE COMPANY a IL corporation, as Surety, hereinafter
called the Surety, are held and firmly bound unto RQ/Brasfield Gorrie JV 3194 Lionshead Avenue, Carlsbad, CA
92010
(Here insert the name and address or legal title of the General Contractor)

as Obligee, hereinafter called the Obligee, in the amount of NINE HUNDRED SEVENTY FIVE THOUSAND TWO
HUNDRED TWENTY ONE AND 00/100 Dollars ($ $975,221.00), for the payment whereof Principal and Surety bind
themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these
presents.
WHEREAS, the Principal has by written agreement dated 2/18/2013 entered into a subcontract with Obligee for
Subcontract Agreement No. 11-4001056: Contract No. N40085-11-C-4011: Painting and Plaster for P-1322, P-
1323 & P-1249 Wallace Creek BEQs & Armory Camp Lejeune, NC 28547: in accordance with drawings and
specifications prepared by                                                  (Here inset full name and title)
which subcontract is by reference made a part hereof, and is hereafter referred to as the subcontract. NOW,
THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the Principal shall promptly make payments
to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the
performance of the subcontract, then this obligation shall be void; otherwise it shall remain in full force and effect
subject, however, to the following conditions:
(1)        A claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or
reasonably required for use in the performance of the contract, labor and material being construed to include that part of
water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the subcontract.
(2)        The above-named Principal and Surety hereby jointly and severally agree with the Obligee that every
claimant as hereby defined, who has not been paid in full before the expiration of a period of ninety (90) days after
the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by
such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or
sums as may be justly due claimant, and have execution thereon. The Obligee shall not be liable for the payment of
any cost or expenses of any such suit.
(3)        No suit or action shall be commenced hereunder by any claimant,
        (a)    After the expiration of one (1) year following the date on which Principal ceased work on said
subcontract it being understood, however, that if any limitation embodied in this bond is prohibited by any law
controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum
period of limitation permitted by such law.
        (b)    Other than in a state court of competent jurisdiction in and for the county or other political subdivision of
the state in which the project, or any part thereof, is situated, or in the United States District Court for the district in
which the project, or any part thereof, is situated, and not elsewhere.
(4)        The amount of this bond shall be reduced by and to the extent of any payment of payments made in good
faith hereunder.

Signed and sealed this Signed and sealed this 19th day of April, 2013

IN THE PRESENCE OF:

_____
Witness

_____
Witness

MASTERWEAVE COMMERCIAL, LLC
(Principal)

_____ (Seal)

RLI INSURANCE COMPANY

By _____
Phillip H. Condra, attorney-in-fact
Bonds Southeast, Inc.
1030 17th Avenue South
Nashville, Tennessee 37212
(615) 321-9700

Page 2 of 2



RLI Surety
P.O. Box 3967 | Peoria, IL 61612-3967
Phone: (800) 645-2402 | Fax: (309) 683-1610

# POWER OF ATTORNEY
## RLI Insurance Company

*Know All Men by These Presents:*

That this Power of Attorney is not valid or in effect unless attached to the bond which it authorizes executed, but may be detached by the approving officer if desired.

That RLI Insurance Company, an Illinois corporation, does hereby make, constitute and appoint:

<u>Gregory E. Nash, Phillip H. Condra, Kelly L. Berry, jointly or severally</u>

in the City of _____Nashville_____ , State of _____Tennessee_____ its true and lawful Agent and Attorney in Fact, with full power and authority hereby conferred, to sign, execute, acknowledge and deliver for and on its behalf as Surety, the following described bond.

   Any and all bonds, undertakings, and recognizances in an amount not to exceed Ten Million Dollars ($10,000,000) for any single obligation.

The acknowledgment and execution of such bond by the said Attorney in Fact shall be as binding upon this Company as if such bond had been executed and acknowledged by the regularly elected officers of this Company.

The RLI Insurance Company further certifies that the following is a true and exact copy of the Resolution adopted by the Board of Directors of RLI Insurance Company, and now in force to-wit:

   "All bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys in Fact or Agents who shall have authority to issue bonds, policies or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

IN WITNESS WHEREOF, the RLI Insurance Company has caused these presents to be executed by its ___Vice President___ with its corporate seal affixed this ___21st___ day of ___August___ , ___2007___.

State of Illinois

County of Peoria }} SS

RLI Insurance Company

By: _____
                                              Roy C. Die                    Vice President

### CERTIFICATE

On this ___21st___ day of ___August___ , ___2007___ before me, a Notary Public, personally appeared ___Roy C. Die___ who being by me duly sworn, acknowledged that he signed the above Power of Attorney as the aforesaid officer of the RLI Insurance Company and acknowledged said instrument to be the voluntary act and deed of said corporation.

I, the undersigned officer of RLI Insurance Company, a stock corporation of the State of Illinois, do hereby certify that the attached Power of Attorney is in full force and effect and is irrevocable; and furthermore, that the Resolution of the Company as set forth in the Power of Attorney, is now in force. In testimony whereof, I have hereunto set my hand and the seal of the RLI Insurance Company this 19th day of ___April___ , ___2013___.

By: *Cherie L Montgomery*
          Cherie L. Montgomery                    Notary Public

RLI Insurance Company

By: _____
                                              Roy C. Die                    Vice President

"OFFICIAL SEAL"
CHERIE L. MONTGOMERY
COMMISSION EXPIRES 09/11/17

4158441020208                                          A0059207

# EXHIBIT D

**CONSTRUCTION INDUSTRY ARBITRATION RULES**
**Demand for Arbitration**

---

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☒
*There is no additional administrative fee for this service.*

| Name of Respondent | | | Name of Representative (if known) | | |
|---|---|---|---|---|---|
| RQ/Brasfield Gorrie JV | | | | | |
| Address: | | | Name of Firm (if applicable) | | |
| 3194 Lionshead Avenue | | | | | |
| | | | Representative's Address: | | |
| City | State | Zip Code | City | State | Zip Code |
| Carlsbad | CA | 92010 | | | |
| Phone No. | | Fax No. | Phone No. | | Fax No. |
| (205) 714-1307 | | (205) 458-0147 | | | |
| Email Address: | | | Email Address: | | |

The named claimant, a party to an arbitration agreement dated 2/25/13 _____, which provides for arbitration under the Construction Industry Rules of the American Arbitration Association, hereby demands arbitration.

ARBITRATION CLAUSE: Please indicate whether the contract containing the dispute resolution clause governing this dispute is a standard industry form contract (such as AIA, ConsensusDOCS or AGC) or a customized contract for the specific project.

Contract Form: customized contract form

THE NATURE OF THE DISPUTE
Non-payment, change of criteria and standards for Scope of Work after commencement of work; refer to attached Preliminary Statement of Claim for more detailed description of dispute and claims.

| Dollar Amount of Claim $ 376,705.40 | Other Relief Sought: ☒ Attorneys Fees ☒ Interest |
|---|---|
| | ☐ Arbitration Costs ☐ Punitive/ Exemplary ☐ Other _____ |

Amount Enclosed $ 4,200.00 _____ In accordance with Fee Schedule: ☐ Flexible Fee Schedule ☒ Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Experience with large paint and finish projects; armed services facilities and FAR's

| Hearing locale requested Chattanooga, TN | Project site Camp Lejeune |
|---|---|
| Estimated time needed for hearings overall: | Specify type of business: Claimant Painting subcontractor |
| _____ hours or 3.00 days | Respondent General Contractor |

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative) Date: 10/16/14 | Name of Representative |
|---|---|
| | Timothy M. Gibbons |
| Name of Claimant | Name of Firm (if applicable) |
| Masterweave Commercial, LLC | Chambliss, Bahner & Stophel, P.C. |
| Address (to be used in connection with this case) | Representative's Address |
| 8000-D East Brainerd Road | 605 Chestnut Street, Suite 1700 |
| City / State / Zip Code | City / State / Zip Code |
| Chattanooga TN 37421 | Chattanooga TN 37450 |
| Phone No. / Fax No. | Phone No. / Fax No. |
| (423) 892-7305 / (423) 892-4380 | (423) 757-0265 / (423) 508-1265 |
| Email Address: | Email Address: |
| mfargo@masterweavecommercial.com | tgibbons@chamblisslaw.com |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.

## Preliminary Statement of Claim

On March 14, 2013, Masterweave contracted with RQ/Brasfield & Gorrie JV ("B&G") to perform painting, finishing and related work at the Wallace Creek BEQs & Armory Project (Contract No. N40085-11-c-4001) ("Project") at Camp Lejeune in Jacksonville, North Carolina. The work included substantial work to cover over new concrete block walls, including the labor-intensive work of all concrete block wall surfaces being skimmed, base coated, textured and painted.

Masterweave planned to commence its work in early April, 2013, but the project was delayed because of weather and incomplete roofing work. When Masterweave was scheduled to commence work on the first floor of the Project, the walls were wet and the floor was flooded. Masterweave was not allowed access to full floors until approximately five (5) months after the requested start date, and even then the rooms were not fully accessible because other trades were working in the rooms and materials and supplies were being stored in the rooms. Masterweave was thus denied proper access to the site to perform its work.

The scope of Masterweave's work was also changed from a block fill and texture system to a skim and texture system, a process requiring substantial additional time. But B&G allowed no extra time for completion of the work for the more time-consuming procedure.

Masterweave commenced its work in mid-June, 2013. On June 24, 2013, B&G designated a specific mock up room to review and approve Masterweave's skim and texture work, with the intent that once approved, Masterweave would be cleared to perform all the skim and texture work in a similar manner for the remainder of the project. Both B&G and the Owner approved the quality of Masterweave's work in the mock up room without any conditions or punch list items. Masterweave justifiably relied on the Owner's and Contractor's approval of the work in the mock up room as being the approved standard for skim and texture work to be performed for the next 11 months. Masterweave provided the same quality of work that had been approved in the mock up room for its remaining skim and texture work.

Much later, on May 19, 2014, after some window treatments had been installed in some of the rooms, the Owner and Contractor withdrew the earlier approval on which Masterweave had relied in performing its work. As a result of the Owner and Contractor withdrawing the earlier approval, the Contractor unilaterally demanded substantial re-work by Masterweave. None of the re-work unilaterally required by the Contractor was needed based on the quality of work previously approved.

B&G has refused to make any further payments to Masterweave until the all work is complete, even though B&G has approved some of the invoices. Masterweave has not been paid for any of its work after its March 2014 invoice, which was reduced by 50%. This lack of payment has severely limited Masterweave's ability to increase manpower, maintain current manpower, and pay laborers and suppliers.

In addition, B&G has utilized other contractors to re-perform work that had already been performed by Masterweave and had been deemed acceptable by the Owner and Contractor.

24920_00/i401/TMG-2014012_4

Case 3:15-cv-00256-GCM   Document 1-2   Filed 06/09/15   Page 54 of 68

B&G intends to backcharge Masterweave for all such work. The work is being performed by other parties not under Masterweave's control, at rates substantially higher than Masterweave's rates.

Masterweave continued to provide materials for the work being re-performed by others, and has an outstanding balance of $86,000 with Sherwin Williams, $19,857.47 of which is attributable to the current reskim/repaint work being performed. Similarly, Masterweave has a balance of $16,802.78 with Porter Paints for other materials being supplied for re-performing work that was previously approved. Because B&G has refused to pay Masterweave any further amounts, Masterweave has been unable to pay these suppliers.

At a job site meeting on July 8, 2014, B&G determined it would deduct the amount of supplemental labor provided by other subcontractors it engaged from the balance of Masterweave's contract. Field orders or work tickets were supposed to be tracked and provided to Masterweave, but for the most part have not been provided.

Masterweave has provided time and material tickets for work being performed by Masterweave, and has also been attempting to track work performed by the other subcontractors hired by B&G. B&G has refused to issue any change orders, but continues to hold the disputed charges from "supplemental labor" as justification for refusing to pay Masterweave.

B&G is essentially demanding that Masterweave perform work without payment. It appears that B&G is attempting to force Masterweave to abandon the project so that it can assert claims under the performance bond. Masterweave has not agreed to B&G's decision but has continued to perform in good faith under protest.

Masterweave requests that payment to be released, and further requests an equitable adjustment for the reskim/repaint process. Other damages include lost profit on a project originally given to Masterweave by B&G and later taken away.

Following is a preliminary summary of Masterweave's claims.

| | | |
|---|---|---|
| Original contract price | $ 975,221.00 | |
| Approved change orders | $ 120,664.86 | |
| **Approved contract price** | $ 1,095,885.86 | |
| | | |
| Pending change orders | $ 33,945.40 | Change order #5 referred to as AES impact, for the roof delay. It was signed and sent, but never returned. |
| | | |
| **Total contract price** | $1,129,831.20 | |
| | | |
| Extra Material Costs/Claims | | |
| Re-work after approval | $ 19,857.47 | This is for the material purchased to re-apply skim, texture, and |

24920_00/1401/TMG-2014012_4

|  |  | repainting all of the ceilings and walls. |
|---|---|---|
| Out of sequence work | $ 85,007.41 | |
| Labor spent on rework from May – July | | $59,191.01 |
| Labor spent in August | | $4,000.00 |
| Anticipated Labor Sept – Oct | | $8,000.00 |
| Housing May – Oct | | $13,816.40 |
| Other Claims | $ 54,238.68 | Combat Ops Contract Profit |
| **Total Claims** | $ 159,103.56 | |
| Total Contract + Claims | $1,288,934.70 | |
| Less total paid to date | $ 913,229.30 | |
| Total Claim Amount | $ 375,705.40 | |

Plus attorneys' fees, interest and other amounts awarded by the arbitrators in accordance with AAA Rules.

# EXHIBIT "A"

Subcontract Agreement No. 11-4001056
GENERAL CONDITIONS FOR FIXED PRICE CONSTRUCTION SUBCONTRACT
UNDER PRIME CONTRACT WITH U S GOVERNMENT AGENCY

1.      ARBITRATION

A.      Agreement to Arbitrate: Any and all claims, disputes, controversies, or matters in question arising out of, or relating to this Subcontract or any alleged breach thereof, except for claims which have been waived by the making or acceptance of final payment, claims under Paragraph 13.A. herein ("Disputes Relating to Owner"), and those excepted by subparagraph F. of this clause, may be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless either Party disagrees. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

B.      Notice of Demand: Notice of the demand for arbitration shall be filed in writing with the other Party to this Subcontract and with the American Arbitration Association. The demand for arbitration shall be made within thirty (30) days after written notice of the claim, and in no event shall it be made after the date of final acceptance of the Work by OWNER or when institution of legal or equitable proceedings on such claim, dispute, or other matter in question would be barred by the applicable statute of limitations. The location of the arbitration proceedings shall be the city of CONTRACTOR's headquarters.

C.      Award: The arbitration award shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

D.      Work Continuation: Unless otherwise agreed in writing, SUBCONTRACTOR shall carry on and continue performing the Work and comply with CONTRACTOR's established work schedule pending arbitration.

E.      Same Arbitrators: To the extent not prohibited by their contracts with others, claims and disputes of the CONTRACTOR, SUBCONTRACTOR, and other subcontractors involving common questions of fact or law shall be heard by the same arbitrator(s) in a single proceeding.

F.      Exceptions: This agreement to arbitrate shall not apply to any claim:

(i) of contribution or indemnity asserted by one Party to this Subcontract against the other party and arising out of an action brought in a state or federal court or arbitration by a person who is under no obligation to arbitrate the subject matter of such action with either Party or does not consent to such arbitration; or

(ii) asserted by SUBCONTRACTOR against CONTRACTOR if CONTRACTOR, or SUBCONTRACTOR through CONTRACTOR asserts said claim, either in whole or part, against OWNER.

G.      Arbitrability: Any dispute over the question of arbitrability of a claim shall be decided by an appropriate court and not by arbitration.

2.      ASSIGNMENT of CLAIMS

SUBCONTRACTOR shall not, without written consent of CONTRACTOR, assign, transfer, nor sublet this Subcontract or any portion of the work required in whole or in part, nor assign any rights to payment hereunder to others.

Notwithstanding the foregoing, if SUBCONTRACTOR assigns any rights to payment hereunder to a qualified third party under the UCC or any other applicable law or regulation, SUBCONTRACTOR agrees to pay (either directly or by offset from payment owed in CONTRACTOR's discretion) CONTRACTOR the sum of $500 as a set up charge to defray CONTRACTOR's increased administration expenses in processing and complying with the assignment.

3.      BANKRUPTCY

CONTRACTOR may terminate this Subcontract for default, in whole or in part, by written or telegraphic notice to SUBCONTRACTOR if:

A.      SUBCONTRACTOR shall become insolvent or make a general assignment for the benefit of creditors, or

B.      A petition under any bankruptcy act or similar statute is filed by or against SUBCONTRACTOR and not vacated within ten (10) days after it is filed.

4.      PERFORMANCE and PAYMENT BONDS

If required by CONTRACTOR or by law, SUBCONTRACTOR shall, within ten (10) calendar days from the date of this Subcontract furnish a 100% performance bond and a 100% labor and material payment bond on bond forms acceptable to CONTRACTOR. The bonding company must be listed on the U.S. Treasury Circular #570 and must have an underwriting limit in excess of the bond amount. In addition, the bonding company must have a rating of 'A-' or better in the current A.M. Best Rating Guide of Property/Casualty Insurance Companies. The SUBCONTRACTOR will be reimbursed for the bond premium up to an amount not to exceed the "Standard Rate" for its class of construction. SUBCONTRACTOR is obligated to include added or reduced bond cost when quoting future changes. Failure of SUBCONTRACTOR to include such cost in change order quotations will result in a waiver by SUBCONTRACTOR to be reimbursed for added bond premium that may be charged to SUBCONTRACTOR by his surety broker and/or surety at the conclusion of the Project.

5.      CALENDAR DATES and TIME is of the ESSENCE

All periods of days referred to in this Subcontract shall be measured in calendar days. Time is of the essence in the performance of this Subcontract.



# EXHIBIT E



A Joint Venture

November 3, 2014

**VIA EMAIL (FisherA@adr.org)**

American Arbitration Association
2200 Century Parkway, Suite 300
Atlanta, GA 30345

Attn:   Aaron Fisher

Re:    Case Number 01-14-0001-7420, Masterweave Commercial, LLC vs. RQ
        Brasfield Gorrie JV

Dear Mr. Fisher:

RQ/Brasfield Gorrie JV ("RQ/BG") received your letter, dated October 23, 2014
regarding the above referenced Case and the arbitration demand filed by Masterweave
Commercial, LLC ("Masterweave"), dated October 16, 2014. RQ/BG writes to inform
you that Masterweave's arbitration demand was inappropriate per the Subcontract
Agreement No. 11-4001056 (the "Subcontract") between RQ/BG and Masterweave and
requests that the Case be dismissed immediately.

The Subcontract states in Exhibit A, Paragraph 1, *Arbitration,* that any claims, disputes,
etc. **"may** be decided by arbitration [...] unless either Party disagrees." (Emphasis
added). Arbitration is not mandatory - both parties must agree to arbitrate - and RQ/BG
does not agree to arbitrate at this time.

Consequently, RQ/BG respectfully requests that AAA dismiss the Case immediately.

Please contact me at 760-477-8667 or mbaker@rqconstruction.com if you have any
questions.

Regards,
RQ/Brasfield Gorrie JV

*Mary Baker*

Mary A. Baker
Corporate Counsel of RQ Construction, LLC

Cc:    Masterweave Commercial, LLC

3194 Lionshead Avenue, Carlsbad, CA 92010 | office 760.631.7707 fax 760.631.8162

A Joint Venture

# EXHIBIT F



From: Aaron Fisher [mailto:Fishera@adr.org]
Sent: Tuesday, November 11, 2014 2:14 PM
To: tgibbons@cbslawfirm.com; Mary Baker
Subject: Masterweave Commercial, LLC V. RQ Brasfield Gorrie JV, AAA# 01-14-0001-7420

Dear Counsel,

After review of the file, the AAA has made an administrative determination that Claimant has met the filing requirements by filing a demand for arbitration providing for administration by the AAA under its Rules. Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the AAA will proceed with the administration of the arbitration.

However, the parties' contentions have been made a part of the file and will be forwarded to the arbitrator upon appointment, at which time the parties may submit their arguments to the arbitrator for determination.

Regards,
Aaron Fisher

 **Aaron Fisher**
**Case Administrator**
American Arbitration Association
2200 Century Parkway Suite 300
Atlanta, GA 30345
www.adr.org
T:888-320-3523
F:877 395 1388

1

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

Confidentiality Notice: The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and is confidential and/or privileged. If you and we have a confidentiality agreement or other non-disclosure obligations between us, this Notice shall be deemed to mark and identify the content of this email and any attachments as confidential and proprietary. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

E-mail is susceptible to data corruption, interception, unauthorized amendment, tampering and viruses, and we only send and receive e-mails on the basis that we are not liable for any such corruption, interception, amendment, tampering or viruses or any consequences thereof.

Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.

2

# EXHIBIT G

November 13, 2014



A Joint Venture

**VIA EMAIL (FisherA@adr.org)**

American Arbitration Association
2200 Century Parkway, Suite 300
Atlanta, GA 30345

Attn:   Aaron Fisher

Re:   Case Number 01-14-0001-7420, Masterweave Commercial, LLC vs. RQ Brasfield Gorrie JV

Dear Mr. Fisher:

RQ/Brasfield Gorrie JV ("RQ/BG") writes to respond to your recent email dated November 11, 2014, and letter dated November 12, 2014.

The full arbitration clause related to this matter is as follows:

1.   ARBITRATION

    A.   Agreement to Arbitrate: Any and all claims, disputes, controversies, or matters in question arising out of, or relating to, this Subcontract or any alleged breach thereof, except for claims which have been waived by the making or acceptance of final payment, claims under Paragraph 13.A. herein ("Disputes Relating to Owner"), and those excepted by subparagraph F., of this clause, may be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless either Party disagrees.  This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

    B.   Notice of Demand: Notice of the demand for arbitration shall be filed in writing with the other Party to this Subcontract and with the American Arbitration Association.  The demand for arbitration shall be made within thirty (30) days after written notice of the claim, and in no event shall it be made after the date of final acceptance of the Work by OWNER or when institution of legal or equitable proceedings on such claim, dispute, or other matter in question would be barred by the applicable statute of limitations.  The location of the arbitration proceedings shall be the city of CONTRACTOR's headquarters.

    C.   Award: The arbitration award shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

    D.   Work Continuation: Unless otherwise agreed in writing, SUBCONTRACTOR shall carry on and continue performing the Work and comply with CONTRACTOR's established work schedule pending arbitration.

    E.   Same Arbitrators: To the extent not prohibited by their contracts with others, claims and disputes of the CONTRACTOR, SUBCONTRACTOR, and other subcontractors involving common questions of fact or law shall be heard by the same arbitrator(s) in a single proceeding.

    F.   Exceptions: This agreement to arbitrate shall not apply to any claim:

    (i) of contribution or indemnity asserted by one Party to this Subcontract against the other party and arising out of an action brought in a state or federal court or arbitration by a person who is under no obligation to arbitrate the subject matter of such action with either Party or does not consent to such arbitration; or

    (ii) asserted by SUBCONTRACTOR against CONTRACTOR if CONTRACTOR, or SUBCONTRACTOR through CONTRACTOR, asserts said claim, either in whole or part, against OWNER.

    G.   Arbitrability: Any dispute over the question of arbitrability of a claim shall be decided by an appropriate court and not by arbitration.

Again, RQ/BG contends the arbitration clause is voluntary and does not compel RQ/BG to participate in this matter.  Paragraph A of the clause is clear.  The word "may" appears in the first reference to whether a dispute is subject to arbitration.  There is no mandate for a decision by arbitration.  The clause requires each side to agree to arbitration.

A Joint Venture

Further, Paragraph F does not provide for arbitration when a party involved in the dispute has not consented to arbitrate. In this matter, RQ/BG will have a cross-claim against RLI Insurance Company ("RLI"), who is the surety to Masterweave, in excess of $1,600,000. Unless it is determined that RLI is required to arbitrate, this matter is not subject to arbitration. RLI has not provided RQ/BG its position regarding arbitration, although RQ/BG has attempted to contact RLI regarding RQ/BG's claim.

Most importantly, AAA has no jurisdiction to determine whether the matter is subject to arbitration. Paragraph G requires any dispute over the whether a claim is subject to arbitration shall be decided by an appropriate court, not an arbitrator. Thus, AAA cannot proceed with the matter until such a decision is made by a court of competent jurisdiction, and, until such time, the administration of the matter by AAA and all decisions by an arbitrator are invalid.

Accordingly, RQ/BG demands that AAA immediately stay further administration of this matter pending determination by a court whether the matter is subject to arbitration through AAA. If AAA does not stay the matter, RQ/BG will be forced to seek an order restraining or enjoining AAA from further administration of the matter pending a court's ruling on the parties' dispute. Any participation by RQ/BG in the administration or proceedings conducted by AAA will be solely as a precaution to prevent an improper order by AAA, and is subject to RQ/BG's objection that AAA is proceeding without jurisdiction and RQ/BG's objection to any ruling or action by AAA on that basis.

Also, RQ/BG objects to the locale determination by AAA on the basis AAA has no jurisdiction, did not allow RQ/BG the opportunity to object, and did not comply with the contract. Paragraph B of the clause requires arbitration to be in the city of RQ/BG's headquarters, which is Carlsbad, California. AAA did not provide an opportunity to RQ/BG to object to the locale after granting Masterweave time to respond to RQ/BG's objection to arbitration. AAA granted Masterweave until November 11, 2014 to respond to RQ/BG's objection to arbitration, making the original November 6, 2014 deadline for answer/counterclaim/objection obsolete. Now, without indicating a new deadline, AAA has erroneously set the location as Chattanooga, TN. RQ/BG hereby objects to this locale determination, in addition to its above objection regarding AAA's jurisdiction over this matter. Please confirm your acknowledgement of this objection.

Thank you for your immediate attention to this matter. Please notify us by close of business on November 13, 2014, if AAA will agree to stay administration of this matter pending determination by the appropriate court.

Please note RQ/BG has obtained outside counsel for this matter, Luke Martin of Bradley Arant Boult Cummings LLP. On all future correspondence to me, please keep Mr. Martin copied at lumartin@babc.com.

Regards,
RQ/Brasfield Gorrie JV

*Mary Baker*

Mary A. Baker
Corporate Counsel of RQ Construction, LLC

Cc:     Tim Gibbons of Chambliss, Bahner & Stophel, P.C. (tgibbons@cbslawfirm.com)

# EXHIBIT H

# EXHIBIT "B"
## Subcontract Agreement No. **11-4001056**

PERSONAL GUARANTEE AGREEMENT

WHEREAS, **Masterweave Commercial** has entered into Subcontract Agreement No. **11-4001056** dated this **02/18/2013**, with **RQ/Brasfield Gorrie JV** ("CONTRACTOR"), this personal guarantee being included in said Subcontract Agreement; and

WHEREAS **Matthew Fargo** (Guarantor) is willing to guarantee all the performance and payment obligations of SUBCONTRACTOR under the Subcontract Agreement,

NOW, THEREFORE, Guarantor agrees as follows:

A.    Guarantor unconditionally guarantees payment of all of SUBCONTRACTOR's performance and payment obligations without CONTRACTOR having first to proceed against SUBCONTRACTOR; and to pay, on demand by CONTRACTOR, any and all amounts claimed to be owed under this Subcontract related to the performance and payment obligations, and all costs, attorney's fees, damages, or expenses which may be suffered by CONTRACTOR by reason of SUBCONTRACTOR's default under the Subcontract Agreement.

B.    This shall be a continuing guarantee against which CONTRACTOR may have recourse, as often as necessary, to ensure against or cure defaults by SUBCONTRACTOR and shall terminate only upon SUBCONTRACTOR's completion of all work under the Subcontract or Guarantor's release by CONTRACTOR.

C.    CONTRACTOR may, without notice to Guarantor and without releasing Guarantor of any liability hereunder, grant extensions of time, change the form of SUBCONTRACTOR's obligations under the Subcontract, and discharge, in its discretion, any party or parties. CONTRACTOR may, without notice, assign this guarantee in whole or in part.

D.    Guarantor waives notice of nonperformance or default by SUBCONTRACTOR under this Subcontract Agreement.

**SUBCONTRACTOR:**
**Masterweave Commercial LLC**

By: _____
Matthew Fargo

Title: _____President_____

Date: _____2-25-13_____

Subcontractor's Initials



**BRADLEY ARANT BOULT CUMMINGS** LLP

BANK OF AMERICA
CORPORATE CENTER
100 North Tryon Street, Suite 2690
Charlotte, NC 28202

CERTIFIED MAIL

7013 3020 0000 7473 0894



UNITED STATES POSTAGE
PITNEY BOWES
02 1P          $ 013.05⁰
0000820210    MAY 20 2015
MAILED FROM ZIP CODE 28202

**RLI Insurance Company**
**9025 North Lindbergh Drive**
**Peoria, IL 61615**

RETURN RECEIPT
REQUESTED



PRIORITY MAIL ★ ★ ★

TRACKED ★ ★ ★ INSURED ★

UNITED STATES POSTAL SERVICE
For Domestic Use Only

Label 107R, July 2013